The Board of Education of Hancock County *v.* Hartford Fire Insurance Company *et al.*

(No. 9232)

Submitted February 10, 1942. Decided March 17, 1942.

*William J. Moore* and *T. F. McKenzie,* for plaintiff in error.

*Riley & Riley,* for defendant in error.

Kenna, Judge:

Forty-two actions in assumpsit were brought in the Circuit Court of Hancock County by the Board of Education of that county against various fire insurance companies to recover under the blanket policies issued by each for the loss by fire of the New Cumberland Graded School on January 20, 1938. It was found that there was no denial of liability, and that the only issue in any case concerned only the quantum of damages, and rested upon the question of whether the building destroyed by fire and its contents was to be valued as a building for the purpose of arriving at its actual cash value, less depreciation,

or was to be treated simply as a collection of material, the use of which as a building had terminated, and hence the cost of construction was not an element to be considered in arriving at that value.

It was ascertained that the defense in each case would rest upon an identical state of facts, and would concern only the amount of the recovery. The forty-two actions were consolidated in the circuit court, reserving to each defendant separately the right to apply for a review. The order consolidating the actions recites that there being no material controversy as to the facts, the consolidated cases were submitted to the trial judge acting in lieu of a jury.

The finding of the trial judge, upon which he proceeded to enter judgment, was that in the consolidated cases the plaintiff recover $8,344.38, instead of the sum of $20,363.00 claimed by the Board of Education as its actual loss. From that judgment, the Board of Education was granted this writ of error, the sole question involved affecting only the amount of recovery.

In May, 1938, the Board of Education of Hancock County adopted a building program based upon assistance which it hoped to procure from the Public Works Administration acting on behalf of the Federal Government. The sponsor's cost in the execution of this joint program, which included tearing down the old building of the New Cumberland Graded School and the construction of a building in its place, was estimated at $265,000.00, and on the basis of that requirement the board, in late June, called a special election to determine whether or not bonds should be issued for the purpose of financing the building program, and at approximately the same time applied for the grant from the Public Works Administration. The election was held in July, and the issuance of the bonds authorized. In late August, the board received and accepted the P. W. A. offer and filed its application for the fifteen per cent advance. The board was promptly advanced $38,800.00.

There seems to have been nothing consequential affecting this matter that happened between late August and

the first of December, when the Board of Education approved plans for the New Cumberland School and other buildings to be erected in the course of the program. Around the middle of December, they advertised for bids and on the 28th entered into a contract with Elm Grove Building Material Company which involved the removal of the old New Cumberland School building, and the construction of a new school house upon the same site for the sum of $75,800.00, the builder being permitted to use the material from the old building with the exception of desks, heating appliances, etc. On the same date, the contract covering the plumbing and heating of the new building was entered into. On December 29th, the board notified the Elm Grove Company to proceed at once to execute the contract, which the construction company did on the following day to an extent that seemed to comply with the P. W. A. requirement, by having their engineer locate and mark the site of the new school building, embracing that of the old, by placing stakes upon the ground. The Board of Education removed their office equipment from the old New Cumberland building, rented space in other buildings to be used as class rooms, and had the desks provided for pupils unbolted from the floor in each schoolroom. On January 16th, the contractor was notified that on January 23rd the old building would be entirely vacated and turned over to them, and in the same letter it was requested to proceed with the demolition of the building. On January 18th, classes were dismissed to reconvene in the rented quarters on January 23rd. On January 20th, the old building's practically complete destruction by fire occurred.

As we have already stated, the controversy before us hinges upon the question of whether the term used in the standard form of fire insurance policies of "actual cash value (ascertained with proper deductions for depreciation)", on the state of facts before us justifies a recovery of what may be termed "going value," or restricts that right of recovery to the value of the material destroyed, eliminating entirely the costs of construction. It is admitted that if its use as a building had actually been permanently term-

inated, the recovery is limited to salvage value. The principal source of controversy seems to be whether the abandonment of use and the time it takes effect is to be determined by the owner's announced purpose and intention, or rests upon the owner's actual conduct respecting the physical use of the property.

Due probably to the fact that circumstances which would raise the question have rarely occurred, and to the further fact that when they did occur they resulted in litigation the consequence of which was deciding the question as a matter of fact rather than as a question of law, there are very few reported cases to assist in reaching a conclusion. The opinion in *McAnarney* v. *Newark Fire Insurance Co.*, 247 N. Y. 176, 159 N. E. 902, 56 A. L. R. 1149, seems to be generally regarded as the most exhaustive discussion of the question. In the *McAnarney* case, recovery was sought under a fire insurance policy for the loss in April, 1920, of buildings which had not been used since 1918, due to the fact that they were not adapted to other use than the manufacture of malt used in making beer, the sale of which was prohibited at the time of the fire. The verdict and judgment was for $55,000.00, and the error assigned was that the trial court had refused to permit the defendant to introduce testimony tending to show that it had been offered for sale in 1919 by the then owner for $12,000.00, and had also refused to permit the introduction of an affidavit made by the plaintiff to the local board of assessors stating that the property had lost its usefulness and was of no value except for the production of malt and that he, as the owner, would accept $13,000.00 in exchange for it. The judgment was reversed and the opinion contains a rather full discussion of insurance as a personal contract of indemnity, and states that "the gainful uses to which the building might have been put" constituted one of the elements in determining the actual cash value of property for the loss of which recovery is sought under a fire insurance policy. It is to be noted that in spite of the rather full discussion and, apparently, exhaustive citation of authority, the case involved but one question: Whether the trial

judge had excluded testimony concerning elements properly to be considered in arriving at the actual value of the destroyed building, and that the court was not required in deciding the question presented to define value nor to name all the elements of which it is comprised. The court very carefully avoided doing so, and remanded the case stating that the trial court had committed restrictive error, among others, "in further charging that the obsolescence of the structures or their inutility for commercial or manufacturing purposes might not be considered."

As opposed to the reasoning of the *McAnarney* case, plaintiff in error cites *Laurent* v. *Chatham Fire Insurance Co.*, 1 Hall (N. Y. Superior Ct.) 45. The *Laurent* case involved the loss by fire of a building which had been constructed by the lessee upon ground held under a lease expiring September 3rd containing a covenant for its renewal, the loss having occurred on the 15th day of August, the burned buildings not having been placed upon foundations nor otherwise attached to the ground. The court, in affirming the denial of a new trial and discussing the extent to which the necessities of the insured, the binding effect of his contract with another, and his immediate circumstances can govern the value of his property, stated: "It will at once be seen, that if this principle of indemnity is to be admitted, the extent and value of the recovery will in every case vary with the special and peculiar circumstances of the insured, and the local advantages or disadvantages of the building, and the uses to which it is applied; and the intrinsic value of the building will form no criterion of the loss of the proprietor in case of its destruction."

In thorough agreement with the reasoning of the *Laurent* opinion is that in *Washington Mills Emery Mfg. Co.* v. *Weymouth Ins. Co.*, 135 Mass. 503, which quotes Chancellor Kent as citing the *Laurent* case to sustain this statement: "* * * the courts look only to the actual value of the building as it stood when lost, and they do not enter into the consideration of these incidental and collateral circumstances, in fixing the true standard of indemnity;

* * *." Plaintiff in error also cites *Washington Mills Emery Mfg. Co.* v. *Commercial Fire Ins. Co.*, 16 F. 646, which arose in Massachusetts and is in agreement with the reasoning of the *Laurent* case. These, the Kentucky case of *Aetna Insurance Co.* v. *Johnson*, 11 Bush 587, 21 Am. Rep. 223, *Ardill* v. *Citizens Ins. Co.*, 20 Ont. App. 605, and *Collinbridge* v. *Royal Exchange Assurance Corp.*, 3 Law Reports (Queen's Bench Div.) 173, together with the *McAnarney* case and the recent Federal case of *National Fire Ins. Co.* v. *School District No. 68*, 115 F. 2d 232, constitute all of the decided cases bearing upon the question now before us. The last named case apparently is based upon a setting of fact similar to the case at bar and follows the reasoning of the *Laurent* opinion without citing the case and with little discussion.

We wish to state quite frankly that we do not approve of a general rule that would permit speculative, collateral questions, including the intended destruction, to enter into the ascertainment of *actual value*. In our judgment, such a principle would multiply litigation and unnecessarily complicate insurance adjustments. On the other hand, it seems quite apparent that if the settled policy of the board of education, that it was legally bound to execute and the performance of which it had definitely entered upon, by the acts of the board itself had eliminated the possible use of the New Cumberland School as a building, they should not be indemnified against its loss to the extent of being paid by insurer its actual going value.

The board had entered upon a binding contract providing for the demolition of the old building, and had notified the builder that it would surrender possession on January 23rd. However, it had caused the Public Works Administration to be notified that work on the project of tearing down the old building, and constructing a new building in its stead, had begun January 1st. It, therefore, would seem that the conduct of the board as to the time of actual abandonment of the use of the building would necessarily fix that time as one of those dates (i. e., January 1st or January 23rd) or on an intervening date.

Until there is a showing indicating the contrary pur-

pose, it may be supposed, as a matter of fact, that all enforceable contracts, particularly those of a public body, the members of which are presumed to properly discharge their public duty, will be substantially performed. True, if the board had been found guilty of improper conduct, the P. W. A. grant could have been withdrawn, but that withdrawal was only a future possibility, not an existing circumstance. As such it does not necessarily overcome the inference to be drawn from the various otherwise binding contracts the board had entered into, nor does it cancel the deduction that may be drawn from the notification, consistent only with the abandoned use, that was received by P. W. A. to the effect that work on the project had been started.

It would be burdensome to discuss the many like instances which we believe the complicated mixed questions of law and fact submitted to the trial judge included. Of course, on questions of fact, his finding is to be given the effect of a verdict, and where there is conflict, either in the direct testimony or in the deductions or inferences to be drawn therefrom, they are to be resolved in favor of the defendant in error. So viewing this record, we have been unable to perceive an apparent error in the judgment of the trial court, but are of the opinion that there is sufficient proof, together with the reasonable inferences to be drawn therefrom, to sustain the finding that the Board of Education prior to January 20, 1938, had permanently stopped using the New Cumberland School building for its intended purpose, and had begun the physical work of its removal.

The judgment of the Circuit Court of Hancock County is therefore affirmed.

*Affirmed.*