Robert O. Brink, J.
Plaintiff has brought an action to recover the sum of $9,400 on a $10,000 fire insurance policy issued by the defendant insurance company. Defendant, in its answer, denied plaintiff’s damages and also denied knowledge as to plaintiff’s interest in the burned property. The case was tried before this court, without a jury, on December 7,1970.
The facts are essentially undisputed. Plaintiff, a Roman Catholic Church incorporated pursuant to the Religious Corporation Law of New York, purchased a two-family residence at 13 Doubleday Street, Binghamton, N. Y., on or about July 11,1968, for the sum of $10,000. Defendant insurance company, through its duly authorized agent, issued a 60-day binder of insurance, effective July 24, 1968, which covered the afore *976 mentioned property in the amount of $10,000. Pursuant to subdivision 3 of section 168 of the Insurance Law, said binder is deemed to include all the terms of the standard fire insurance policy of the 'State of New York.
Thereafter, on August -18, 1968, the property was substantially damaged by fire. Plaintiff submitted a proof of loss statement to the defendant insurance company, in which a claim was made for $9,400. This sum was arrived at by subtracting the estimated value of the land, ($600 from the $10,000 purchase price). Defendant refused to accept this proof of loss.
Defendant contends that, in light of the circumstances surrounding the purchase of this property, and the purpose for which the purchase was made, plaintiff had no insurable interest in the building. Defendant further contends that, even if an insurable interest in the property was found, the actual cash value of the property at the time of loss was minimal.
The property in issue, a two-family residence at the above address, was adjacent to, and within five feet of the rectory of the plaintiff, hereinafter referred to as the “ church”. In order to purchase said property, the board of trustees of the church submitted, as required, a proposed resolution to the Bishop of the diocese. The resolution requested permission to purchase the property in issue, for the sum of $10,000, and also permission to demolish the house. In the resolution, the estimated cost for this work was $1,000.
According to the resolution, which was received in evidence, the house cut off light from the rectory and the purchase of this property and then the removal of the house, would eliminate this bad condition. The resolution also informed the Bishop that the money for the proposed project was in the church treasury. The resolution was approved by Bishop Walter A. Foery on June 7,1968, and the property subsequently purchased.
The two families living in the house moved out on or about August 1, 1968, and services were disconnected. The structure was vacant and unoccupied at the time of the fire, and, according to the testimony of Father O’Brien, the church’s pastor, there were no plans, at that time, for its use. The pastor also testified he had obtained, prior to the fire, a quotation of $2,100 for the .demolition of the structure.
It is also Father O’Brien’s uncontroverted testimony that Mr. Boland, the duly authorized agent of the defendant, was *977 informed at the time the binder of insurance was issued, that the structure was to be eventually demolished.
Defendant contends, due to the above circumstances, the church had no insurable interest in the property in issue, since it had no substantial economic interest in the preservation of the property from destruction as is required by section 148 of the Insurance Law.
From the evidence on the trial, it is possible to draw an inference that the property in issue might not have been demolished in the near future. It appears that the cost of demolition could have amounted to more than twice the estimate set out in the resolution approved by the Bishop. The soundness of the estimate is questionable since, according to Father O’Brien’s testimony, the figure “ was obviously a guess on my part or rather a price that I would be willing to pay”. The demolition of the building may have been rendered unfeasible at that time, by the actual, as opposed to the estimated cost of the project. No arrangements had been made with any wrecker to demolish the building. The insured had the right to change its plans up until the time the building was actually demolished. Since “ It is not necessary to constitute an insurable interest that the interest is such that the event insured against would necessarily subject the insured to loss [and] it is sufficient that it might do so and that pecuniary injury would be the natural consequence ”. (Riggs v. Commercial Mut. Ins. Co., 125 N. Y. 7, 13), this court is of the opinion that the time and thus the actuality of demolition was sufficiently uncertain so as to require a finding of an insurable interest. (Irwin v. Westchester Fire Ins. Co., 58 Misc. 441, affd. without opinion 133 App. Div. 920, affd. without opinion 199 N. Y. 550; Bailey v. Gulf Ins. Co., 406 F. 2d 47.)
It appears from the record that defendant, through its agent, was informed that the property was to be eventually demolished. However, the binder covering the property was issued and the premium for coverage paid. In view of the actual situation as set out above, it is apparent that the agent’s knowledge that the building was to be eventually demolished, was knowledge of the circumstances as they were. When the insured has, as here, some interest in the property, and the insurance company issues a policy and collects premiums with knowledge of the circumstances upon which, subsequent to loss, they base their claim of lack of insurable interest, it is not a violation of public policy to hold the insurance company estopped from questioning the sufficiency of the interest. (44 *978 C. J. S., Insurance, § 175; 30 N. Y. Jur., Insurance, § 751; Wall v. Metropolitan Ins. Co., 239 App. Div. 560; Holmes v. Nationwide Mut. Ins. Co., 40 Misc 2d 894, affd. without opn. 19 A D 2d 947.) Such a holding appears especially equitable to the court, where, as in the instant case, the alleged lack of insurance interest is not raised, other than as a denial, in defendant’s answer, of knowledge concerning plaintiff’s interest in the property.
In the instant case,- the evidence is uncontroverted that the building was purchased approximately one month before the fire, for $10,000. It was also insured in that amount, with defendant’s agent, apparently fixing the face value of the policy. Plaintiff’s expert testified that the fair market value of the property prior to the fire, was $10,000 with its value after said event at $600. The expert also testified that the building was a total loss after the fire and that the cost of repair would be perhaps twice the purchase price. Defendant offered no controversial proof as to damages. (Bailey v. Gulf Ins. Co., 406 F. 2d 47, supra; Girard Ins. Co. v. Taylor, 6 A D 2d 359; Federowicz v. Potomac Ins. Co. of Dist. of Columbia, 7 A D 2d 330.)
It is this court’s opinion that plaintiff had an insurable interest in the property, and that the plaintiff should recover from the defendant the sum of $9,400 with interest from the 11th day of October, 1968, together with the taxable costs of the action.