The **PATERSON–LEITCH COMPANY**,
Plaintiff,

v.

**INSURANCE COMPANY OF NORTH
AMERICA**, Defendant.

No. C 72–827.

United States District Court,
N. D. Ohio, E. D.

Oct. 10, 1973.

As Amended Oct. 29, 1973.

Phillip J. Campanella, Spieth, Bell, McCurdy & Newell, Cleveland, Ohio, for plaintiff.

Murray K. Lenson, Cleveland, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

BATTISTI, Chief Judge.

Plaintiff, The Paterson-Leitch Company, owner of three adjoining dwellings damaged by fire, brings this action upon an insurance policy (Standard Fire Insurance Policy No. SFB 20 26 01) issued by defendant, Insurance Company of North America, covering the loss of these dwellings by fire. Federal jurisdiction is predicated on diversity of citizenship, 28 U.S.C. § 1332.

Plaintiff has filed a motion for summary judgment pursuant to Rule 56, F.R.Civ.P. The parties have filed briefs, admissions depositions and interrogatories in support of their respective positions.

The following facts relevant to this case appear to be substantially undisputed. On February 28, 1972, the dwellings here in question,[1] fully owned by plaintiff, and covered by a genuine and effective fire insurance policy issued by defendant, were damaged by fire. The origin of the fire was unknown, but it did not occur from any of the causes excepted in the insurance policy here in question. (Defendant's Answers to Plaintiff's Supplemental Request for Admissions, No. 17.) Immediately subsequent to the fire, plaintiff duly notified defendant of the loss and damage to the insured dwellings. (See Defendant's Answers to Plaintiff's Request for Admissions, No. 20.) Thereafter, on March 2, 1972, in the early morning, defendant sent one of its authorized claims adjusters, Mr. Boyd Gunnison, to inspect the insured dwellings, and make estimates of the extent of damages. (See Deposition of Mr. Boyd Gunnison, p. 32; Defendant's Answers to Plaintiff's Request for Admissions, No. 33.)

There is much dispute between the parties as to what Mr. Gunnison accomplished as a result of his inspection of the damaged dwellings. Defendant contends that Mr. Gunnison only conducted a cursory examination of the damaged premises and never made any final or conclusive estimates as to the actual cash value of plaintiff's alleged loss. Plaintiff, on the other hand, argues that Mr. Gunnison's estimates amounting to a total of $11,500.00[2] must be deemed final, particularly in view of the fact that when Mr. Gunnison was informed of plaintiff's plans to raze what remained of the dwellings, he specifically in-

---

1. The insurance policy covered, in addition to other properties owned by plaintiff, a one-family dwelling situated at 927 East 67 Street, also known as 929 East 67 Street, Cleveland, Ohio, for the sum of $7,500.00; a one-family dwelling situated at Rear 927 East 67 Street, also known as 929 East 67 Street, Cleveland, Ohio, for the sum of $2,500.00; a one-family dwelling situated at 931 East 67 Street, Cleveland, Ohio, for the sum of $10,000.00.

2. Mr. Gunnison's estimates were as follows: (a) 927 East 67 Street: total loss—$7,500.00; (b) 931 East 67 Street: partial loss—$3000.00; (c) 927 Rear East 67 Street: partial loss—$1000.00. (See PX 4 attached to the deposition of Mr. Boyd Gunnison.) Plaintiff also seeks $1,195.00, which it alleges was the cost of removing debris caused by the fire, and interest on the total recovery.

formed plaintiff's agents that he had no objection to their carrying out these plans, thereby precluding any further physical inspection of the dwellings by him. (Deposition of Mr. Boyd Gunnison, p. 75.) It seems undisputed, however, that as a result of the fire one of the insured dwellings was at least twenty percent destroyed; another thirty-three percent destroyed; and the last eighty percent destroyed. (See Defendant's Answers to Plaintiff's Supplemental Request for Admissions, Nos. 6, 7; Defendant's Answers to Plaintiff's Interrogatories No. 9 [F].)

The parties are likewise in accord that prior to the fire and sometime between February 10 and February 16, 1972, plaintiff entered into a contract with the Harris Wrecking Company to have the three insured dwellings demolished. (See Plaintiff's Answers to Defendant's First Set of Interrogatories, Nos. 2, 3); that prior to February 28, 1972, the Harris Wrecking Company had obtained all or nearly all the permits necessary to undertake the demolition work; and that again prior to February 28, 1972, all the utilities in the insured dwellings had been disconnected. (See Deposition of Jerome Harris and exhibits attached thereto.) No specific date, however, had been set for the commencement of the demolition. (See Deposition of Jerome Harris, p. 29.) Nor had plaintiff agreed to convey or sell to the Harris Wrecking Company any of the materials that the dwellings were composed of.

There is no dispute, in addition, that prior to February 28, 1972, the insured dwellings had been vacated by their tenants. With respect to 931 East 67 Street, the last tenant moved out sometime in January, 1972. With respect to 927 East 67 Street and Rear 927 East 67 Street, the actual date the buildings were vacated is not completely clear. Plaintiff formally submits that the last tenants moved out over the weekend of February 27, 1972. (See Plaintiff's Answers to Defendant's Set of Interrogatories, No. 10.) Information supplied to Mr. Gunnison on March 2, 1972, however, seems to indicate that the dwellings were vacated a few days earlier than that. (See Deposition of Boyd Gunnison, p. 35.)

Finally it is undisputed that prior to the fire and after the last tenant left the insured premises, no watchman or other security personnel was employed to watch the buildings for the purpose of preventing access thereto by vagrants. (See Plaintiff's Answers to Defendant's First Set of Interrogatories, No. 15.)

Defendant's opposition to plaintiff's motion for summary judgment is essentially bottomed on three arguments. First, defendant contends that plaintiff had effectively extinguished its insurable interest in the dwellings by the time of the fire on February 28, 1972. Second, it submits that even if plaintiff had retained its insurable interest in the properties at the time of the fire there are genuine issues of fact in dispute as to whether the coverage under the insurance policy had been suspended by reason of an increase of the fire hazard caused by means within the control or knowledge of plaintiff. Finally, defendant argues that there are genuine issues of fact in dispute as to what damages, if any, defendant sustained as a result of the fire.

Upon consideration of the evidence, and for the reasons set forth below, plaintiff is granted partial summary adjudication pursuant to Rule 56(d), F.R. Civ.P., insofar as the Court holds that plaintiff did have an insurable interest in the dwellings at the time of the fire. In all other respects, however, plaintiff's Motion for Summary Judgment is denied.

## INSURABLE INTEREST

The insurance policy issued by defendant to plaintiff provides in pertinent part:

"In consideration of the provisions and stipulations herein or added hereto and of the premium specified, this company . . . does insure the named insured . . . to the extent

of the actual cash value of the property at the time of loss, but not exceeding the amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss . . . *nor in any event for more than the interest of the insured,* against all DIRECT LOSS BY FIRE." (Emphasis added.)

As defendant points out in its briefs, it is well established that to recover under an insurance policy for fire loss to property, an insured must have an insurable interest in the property at the time of the loss. See 30 Ohio Jur.2d §§ 301, 302, 306; Stauder v. Associated General Fire Co., 105 Ohio App. 105, 151 N.E.2d 583 (1957). "[A]nyone has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction." 30 Ohio Jur.2d § 305.

Defendant argues that by entering into a contract to have its insured dwellings demolished, by allowing the wrecking company to secure, or at least begin to secure, the necessary permits for demolition, by vacating the dwellings prior to the prospective demolition, and by allowing all utilities in the dwellings to be disconnected, plaintiff had effectively extinguished its insurable interest in the dwellings. Defendant's point, it would seem, is that because the insured dwellings were apparently about to be demolished, they were no longer of any value to plaintiff at the time of the fire and, in consequence, plaintiff lacked any insurable interest thereon.

Defendant cites no Ohio authority supporting this position. Instead it places reliance on a number of cases from other jurisdictions dealing with situations similar to the one at bar. *See* Aetna State Bank v. Maryland Casualty Co., 345 F.Supp. 903 (N.D.Ill.1972); Garcy Corp. v. The Home Ins. Co. et al., 353 F.Supp. 329 (N.D.Ill.1973); Lieberman v. Hartford Fire Ins. Co., 6 Ill. App.3d 948, 287 N.E.2d 38 (1972); Royal Ins. Co. Ltd. v. The Sisters of Presentation, 430 F.2d 759 (9th Cir. 1970); Leggio v. Millers National Ins. Co., 398 S.W.2d 607 (Tex.Civ.App.1965); Board of Education of Hancock Co. v. Hartford Fire Ins. Co., 124 W.Va. 163, 19 S.E.2d 448 (1942). The circumstances of these cases, however, upon careful examination, are clearly distinguishable from those of the instant case; moreover, the spirit of their holdings may not be viewed as controlling or dictating the result herein.

*Aetna, Garcy,* and *Lieberman* appear to stand for the proposition, *inter alia,* that where an owner is bound by contract for the destruction of his insured properties, *and demolition has already commenced,* his insurable interest in the properties is extinguished. Here, however, although plaintiff had entered into a contract for demolition, the actual physical work had not yet begun. Indeed, no date had been specified for the demolition prior to the fire. At the time of the fire, therefore, plaintiff's insured dwellings were completely intact and fully at the disposition, and in the control, of plaintiff.

Defendant argues, however, that *Aetna, Garcy* and *Lieberman* should be broadly read. It maintains that the spirit of these holdings, if not their language, is that whenever it appears certain that a property owner is going to demolish his insured properties, the Court need not wait for the ball to actually hit the building in order to rule that the property owner's insurable interest has been extinguished.

It must be remembered, however, that the contract plaintiff had with the Harris Wrecking Company was not specifically enforceable. The contract was nothing more than a simple service contract. It would seem, therefore, that plaintiff could have fairly easily backed out of this contract or, at the most, been liable for damages. Plaintiff, at the time of the fire, was perfectly free to do with the dwellings as it wished. It was not obligated to carry out the demolition; it still had

both the right and the time to alter its plans and preserve the dwellings. *See* St. Paul's Roman Catholic Church v. Westchester, 65 Misc.2d 975, 977, 319 N.Y.S.2d 239, 241 (Sup.Ct.1971). In light of these circumstances, therefore, the Court cannot say that the demolition of the dwellings was a certainty at the time of the fire. Rather, whether the demolition would have actually taken place was still conjectural when the fire occurred.

It is clear, in any event, that in *Aetna*, *Garcy*, and *Lieberman* the courts regarded the fact that demolition had already begun as crucial. As was noted in *Aetna*, for example, 345 F.Supp. at 907:

" . . . we find a distinct difference between an expressed interest in wrecking the insured property, and the actual implementation of that decision and the occurrence of the loss while the wrecking was actually taking place."

Similarly in *Garcy* it is noted at 353 F. Supp. 332–333:

"To equate an interest to commence wrecking in the future with the actual commencement of wrecking would be to ignore the realities of the situation."

Accordingly, these cases may not be viewed as dispositive or controlling herein.

Defendant's reliance on Royal Ins. Co. Ltd. v. Sisters of Presentation, *supra*, and Leggio v. Millers National Ins. Co., *supra*, is likewise misplaced. In the *Royal Insurance* case, the Sisters of Presentation sought to recover on a fire insurance policy covering a dilapidated convent they had formerly occupied. The Ninth Circuit Court of Appeals ruled that under California law the Sisters no longer had an insurable interest in the convent at the time the fire occurred. The Court noted, *inter alia*, that prior to the fire the Sisters had totally abandoned the old convent and moved to a new one; that due to contractual obligations with the Bishop of Oakland, California, the Sisters had legally bound themselves to allow the demolition of the convent, and this obligation would have been specifically enforceable against them.

In *Leggio*, *supra*, the owner of a building destroyed by fire had previously given his lessee an option to demolish the building and replace it with a new structure. There it was held that if the option had been exercised prior to the fire the owner no longer had an insurable interest in the building.

Both *Royal Insurance* and *Leggio*, therefore, are cases where the insured owners of the properties in question were deemed to have lost their insurable interest because they had, in effect, divested themselves of any pecuniary interest in their property. In the instant case, however, plaintiff had in no manner whatsoever divested itself, or conveyed away, any interest in its dwellings in any like manner. Both cases, accordingly, are largely inapplicable to the facts herein.

A case also cited by defendant and more on point with the facts of the instant case is Board of Education of Hancock County v. Hartford Fire Ins. Co. et al., *supra*. In that case suit was brought on a number of insurance policies covering an old school building which had been completely destroyed by fire. It was established, however, that prior to the fire the Board of Education had not only contracted to have the building demolished, but had totally vacated the building, given the wrecking contractor express notification to execute the demolition work, permitted the contractor to physically stake out the area of the school, and notified the Public Works Administration that the work of tearing down the old building had begun.

In light of these circumstances, the West Virginia Supreme Court concluded:

"There is sufficient proof, together with the reasonable inference to be drawn therefrom, to sustain the finding that the Board of Education prior

to January 20, 1938 [the date of the fire] had permanently stopped using the New Cumberland School building for its intended purpose, and *had begun the physical work of its removal.* (Emphasis added.) *Id.*, 124 W.Va. at 169, 19 S.E.2d at 451.

The Court, nonetheless, was of the opinion that there was no question as to the liability of the defendant insurance companies on their contracts. Rather, the real issue in dispute was the quantum of damages the Board was entitled to.

Board of Education of Hancock County v. Hartford Fire Ins. Co. et al., *supra,* therefore, may not be read as supporting defendant's position. While there the Board had clearly and irrevocably committed itself to the physical demolition of its school building, the same cannot be said for the plaintiff at bar. Moreover, even in the circumstances of the case before it, the West Virginia Supreme Court seemed to assume that the Board still had an insurable interest of some sort in its school building. It was of the opinion, however, that the determination of damages the Board was entitled to should be made in light of the fact that demolition was actually in process before the fire occurred. Accordingly, the Court affirmed the trial court's ruling allowing evidence regarding the demolition to enter into the ascertainment of damages. The Board's recovery was, in consequence, substantially reduced.[3]

It seems clear to this Court that when plaintiff herein contracted with defendant it fully and reasonably expected that its insured dwellings would be covered against fire damage for so long as it had not irrecovably committed itself to their demolition. Plaintiff's contract with a third party to have the building razed at an unspecified future date may not be considered as suddenly terminating its rights under the insurance policy. Nor do the additional facts that the buildings were vacated, that the wrecking company had obtained all or nearly all the requisite permits, and that the dwellings' utilities had been disconnected change this conclusion.

The Court adopts as persuasive to the circumstances of the instant case the rule of law and reasoning set forth in American Home Fire Assurance Co. of N. Y. v. Mid-West Enterprise Co., 189 F.2d 528 (10th Cir. 1951). In that case one of the issues in dispute was whether the insurable interest of the plaintiff-owner was subject to reduction by reason of the fact that prior to the fire it had entered into a contract with its lessee under which it was obligated to destroy parts of the insured building. The court noted that although the contract had been effective nearly a year prior to the fire, no physical changes of any kind had yet been made before the fire occurred. It set forth as a guiding principle of law:

"At least until changes were made in fulfillment of the contract there was no change in the insurable interest of the owner in the building. And the insurance company cannot be heard to say that the contract operated to diminish its liability under the policy." *Id.* at 534.

This language was cited with approval in Bailey v. Gulf Ins. Co., 406 F.2d 47, 48 (10th Cir. 1969). *See* also Irwin v. Westchester Fire Ins. Co., 58 Misc. 441, 109 N.Y.S. 612 (Sup.Ct.1908).

Accordingly, this Court rules, as a matter of law, that plaintiff's insurable interest had not been extinguished at the time of the fire here in question.

### INCREASE OF HAZARD

The insurance contract here in question contains the following provision:

"  .  .  . this Company shall not be liable for loss occurring (a) while the

---

3. The Court, accordingly, affirmed a judgment treating the building at the time of destruction as simply a collection of material, rather than a building, so that the cost of reconstruction was not an element to be considered in determining actual cash value. *See* generally, 61 A.L.R.2d 711, 729.

hazard is increased by any means within the control or knowledge of the insured. . . ."

Defendant argues that even if the Court finds that plaintiff had an insurable interest at the time of the fire, there are, at the least, genuine issues of fact in dispute as to whether plaintiff had increased the fire hazard, within the meaning of the above provision, and thus suspended the policy's coverage prior to the fire.

The increase of hazard clause in the insurance contract, however, must be read in conjunction with another provision contained therein. Section V, paragraph C of the contract provides:

"VACANCY AND UNOCCUPANCY: Permission granted for vacancy or unoccupancy without limit of time, except as provided in any endorsement attached to this policy."

There being no endorsement to the contrary, it would seem that, in the circumstances of this case, defendant may not rely on vacancy or unoccupancy, as such, in defending on the basis of the increase of hazard clause.[4] It must be shown that plaintiff otherwise increased the fire hazard prior to the fire either by having substantially abandoned the dwellings so as to allow easy access to vagrants, or by having allowed the dwellings to fall into a state of extensive and dangerous disrepair. *See* Frost House, Inc. v. Preferred Mutual Ins. Co., 15 A.D.2d 741, 223 N.Y.S.2d 875 (1962); Asbell v. Pearl Assurance Co., 59 N.J. Super. 324, 157 A.2d 728 (1960).

The record reveals that these issues are not ripe for summary treatment. The parties are in substantial dispute as to the state of repair of the dwellings prior to the fire. (See Deposition of Mr. Boyd Gunnison, pp. 83–85; Plaintiff's Answers to Defendant's First Set of Interrogatories, No. 17.) This question, therefore, must be presented and developed at trial. In addition, while it is undisputed that one of the dwellings was only unoccupied for a period no longer than approximately six weeks, and the other two for a period no longer than a few days, or at most a week, it is also undisputed that plaintiff had not employed a watchman or other security personnel for the purpose of safeguarding the dwellings during the period of vacancy. In these circumstances, the Court cannot say, as a matter of law, that the dwellings were not so abandoned as to be left open to vagrants and undesirables. Reasonable minds might differ on this point. Accordingly, partial summary judgment as to liability may not be granted.

## DAMAGES

The parties are in disagreement as to what factors should be considered, or what test should be applied, in determining the "actual cash value" of plaintiff's dwellings for purposes of determining damages. It is clear that if it is found that any of the dwellings were totally destroyed by the fire, Ohio's Valued Policy Statute [Ohio Rev.Code § 3929.25] would be applicable. This section provides in pertinent part:

"A person, company, or association insuring any building or structure against loss or damage by fire or lightning, by renewal of a policy, shall have such building or structure examined by his or its agent, and a full description thereof made, and its insurable value fixed, by said agent. In the absence of any change increasing the risk without the consent of the insurers, and in the absence of intentional fraud on the part of the insured, in the case of total loss the whole amount mentioned in the policy

---

4. Another provision in the insurance contract provides:

"Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring . . . (b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days."

As the dwellings herein were not vacant for a period of sixty consecutive days prior to the fire, the provision appears to be inapplicable to this case.

or renewal, upon which the insurer received a premium, shall be paid. . . ."

It is also clear, and undisputed by the parties, that in the case of partial loss the test ordinarily utilized in Ohio for determining damages to dwellings is the cash amount that would be required to put the property in the same condition in which it was at the time of the loss, i. e., in general, replacement cost minus depreciation, and not market value. See Ohio Jur.2d, ¶ 673.

Defendant argues, however, that in the circumstances of this case the Court should deviate from the "actual cash value" formula and allow evidence to be introduced going to the relative value to plaintiff of the dwellings at the time of the fire. More specifically, defendant contends that the Court should permit the introduction at trial of all material evidence relating to plaintiff's demolition contract.

Defendant has cited no case comparable to the one at bar holding that evidence going to demolition may properly be introduced in circumstances where the actual physical demolition of the dwellings had not yet commenced. Indeed courts have been generally reluctant to allow such evidence to enter into a jury's deliberations on damages. In Board of Education of Hancock County v. Hartford Fire Ins. Co. et al., *supra,* where such evidence was allowed, but in a situation distinguishable from the one at bar, it was nevertheless said, 124 W. Va. at p. 168, 19 S.E.2d at p. 450:

"We wish to state quite frankly that we do not approve of a general rule that would permit speculative, collateral questions, including the intended destruction, to enter into the ascertainment of actual value. In our judgment such a principle would multiply litigation and unnecessarily complicate insurance adjustments. . . ."

*See* also American Ins. Co. v. Treasurer School Dist. No. 37, 273 F.2d 757 (10th

Cir. 1959); Knuppel v. American Ins. Co., 269 F.2d 163 (7th Cir. 1959); Bailey v. Gulf Ins. Co., *supra;* American Home Fire Assurance Co. of N. Y. v. Mid-West Enterprise Co., *supra.*

In Aetna State Bank v. Maryland Casualty Company, a case already discussed *supra,* the court was faced with a similar challenge to Illinois' "actual cash value" rule (seemingly identical to that of Ohio) in the context of a situation where the actual physical demolition of the insured buildings had already commenced prior to the fire. The court concluded:

"... actual cash value is not the proper criteria for determining the amount of loss for property which is *in the process* of being demolished and whose demolition at the time of loss is no longer a matter of conjecture or speculation and we hold that although the insurance policies were in effect at the time of loss . . . there is nevertheless no compensable loss in view of the fact that there is no value to buildings in the process of demolition." *Id.,* 345 F.Supp. at 909.

At the same time, however, the court took care "to reiterate the continuing viability and *general* applicability of the 'actual cash value' rule and to highlight the narrow grounds" of its decision. *Id.* at 909. Properly read, therefore, this case holds that only when demolition actually has begun, or is a virtual certainty, should courts risk opening up "a Pandora's box" of collateral issues "by allowing the amount of loss to be determined by the relative value to the insured at the time of loss." *Id.* at 908.

▮ Accordingly, the Court will not permit evidence going to plaintiff's demolition contract to be introduced at trial, but will confine the parties to evidence directly bearing on "actual cash value."

Dealing now with the issues of actual damages in the case at bar, plaintiff argues that on the basis of the record, the damages it would be entitled to, if defendant is found to be liable under the

insurance contract, have been clearly established. The Court cannot agree. There is no conclusive evidence yet presented as to the "actual cash value" of the dwellings for purposes of fixing damages.

 Plaintiff contends, however, that Mr. Gunnison's estimates of "actual cash value" were final and binding. Defendant, on the other hand, disputes this, maintaining that Mr. Gunnison's estimates were only first impressions, made without careful consideration of depreciation and other relevant factors. A careful examination of Mr. Gunnison's deposition, and the exhibits attached thereto, leads this Court to the conclusion that while Mr. Gunnison's estimates represent strong evidence of "actual cash value," they may not be deemed as conclusive, particularly for purposes of summary judgment.

In addition, the Court cannot say on the record herein that it has been conclusively established that one of the dwellings, 927 East 67 Street, was a "total loss" within the meaning of Ohio Rev.Code § 3929.25. It should be noted, however, that in order for a building or dwelling to be so viewed, it is not necessary that all the material composing the building be destroyed. Rather, the test is whether the building has lost its identity and specific character as a building, even though some parts of it still remain standing. *See* Penn. Fire Ins. Co. v. Drackett, 63 Ohio St. 41, 57 N.E. 962 (1900); 30 Ohio Jur.2d ¶ 670.

The determination of damages, therefore, in the event defendant is found liable on the insurance policy herein must await fuller development and treatment at trial.

## SUMMARY

In conclusion, plaintiff's Motion for Summary Judgment is granted only insofar as, pursuant to Rule 56(d), F.R. Civ.P., the Court holds that plaintiff did have an insurable interest in its insured dwellings prior to the fire. In addition, and also in accordance with Rule 56(d), F.R.Civ.P., the facts set forth in this opinion, and found to be undisputed, shall be deemed established for purposes of trial.

It is so ordered.