USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-2291 THE NEW PONCE SHOPPING CENTER, S.E. AND AARON SOKOL, Plaintiffs - Appellees, v. INTEGRAND ASSURANCE COMPANY, Defendant - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Daniel R. Dom nguez, U.S. District Judge] ___________________ ____________________ Before Lynch, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Cummings,* Circuit Judge. _____________ _____________________ Jos E. Otero Matos, with whom Irizarry, Otero & L pez was ___________________ ________________________ on brief for appellant. Enrique Peral, with whom Mu oz Boneta Gonz lez Arbona ______________ _______________________________ Ben tez & Peral was on brief for appellees. _______________ ____________________ June 25, 1996 ____________________  ____________________ * Of the Seventh Circuit, sitting by designation. CUMMINGS, Circuit Judge. Fire destroyed a building in _____________ Ponce, Puerto Rico, that likely would have been demolished at the owner's behest absent the fire. The insurance company refused to pay the policy amount, arguing that the owner lacked an insurable interest by virtue of the almost certain plans for demolition. The district court rejected that argument. We affirm on the basis that the owner had not abandoned the building pursuant to an "irrevocable commitment" to demolish it. I. Plaintiff The New Ponce Shopping Center ("New Ponce") is a partnership that owns several commercial properties in Ponce, Puerto Rico. In 1985, New Ponce purchased the Santa Mar a Shopping Center, all of which it renovated except for La Bolera Building: La Bolera was under a lease contract to Venancio Santos that would not expire until October 1992. Although Santos attempted to renew the contract, Aaron Sokol, New Ponce's managing partner, refused -- apparently because New Ponce intended to construct a high rise residential condominium building on the site. There is other evidence of New Ponce's intent to demolish La Bolera at the end of the lease: preliminary permits had been sought and obtained from the proper government agency since September 1992; La Bolera obtained quotations from four persons to demolish the building; and Engineer Lombardo P rez was engaged by New Ponce to obtain additional necessary permits. -2- After Santos' lease ended in October 1992, La Bolera Building was not put to any purpose; rather, the building was broken into several times and became a hangout for "undesirables." Wigberto Morales, General Manager of the shopping center, testified that he did not increase security at the building because he knew it was to be demolished. On January 15, 1993, P rez submitted documents for permission to demolish La Bolera, including a letter signed by Sokol stating that demolition was urgent to avoid vandalism and crime; the letter also mentioned New Ponce's intent to construct the condominium. Four days later on January 19, La Bolera was destroyed by fire. There is no question that prior to the fire New Ponce intended to proceed with its plans to demolish the building. La Bolera Building was insured by Defendant Integrand Assurance Company ("Integrand") for up to $699,750 against, among other things, loss by fire. Integrand immediately hired Benjam n Acosta to investigate and adjust the fire loss. Acosta learned of the demolition plans through meetings with General Manager Morales and Engineer P rez. It is apparent from Acosta's subsequent correspondence with New Ponce that he believed New Ponce could change its demolition plans. In a letter to Morales, he stated that if "you decide to repair and/or reconstruct the affected structure, [Integrand] requires that you refrain from demolishing or removing any part of the same since [Integrand] would opt to order that the affected property be put into the same or better conditions than it was at the time of the fire." -3- The letter continued: "If you decide to proceed with the already projected demolition . . . , [Integrand] will understand that it will be free of responsibility . . . ." A fax sent to New Ponce's insurance broker is to like effect. The fax also stated that, should New Ponce decide to repair or rebuild, it should send the necessary plans and specifications in order to obtain construction permits. Managing Partner Sokol met with Acosta on February 3, 1993. During that meeting, Sokol confirmed the demolition plans, but said that in light of the option exercised by Integrand, New Ponce had decided to reconstruct La Bolera Building. On February 9, Sokol sent the necessary plans and specifications to Acosta. Engineer P rez and Integrand's contractor discussed the scope of the reconstruction and agreed on the work that needed to be done; the parties exchanged correspondence regarding La Bolera's reconstruction. Integrand's contractor initially estimated the cost at $1,265,766 if the entire structure required replacement, plus $250,000 to bring the structure up to code and $55,000 in salvage and demolition expenses. In a revised estimate, the contractor said he could reconstruct for $350,000 plus $200,000 for code compliance. Acosta then stated that New Ponce should pay $283,790 of the cost: $83,790 as a penalty for underinsurance and $200,000 for code compliance. Sokol again met with Acosta and objected to the cost figures. Unwavering, Acosta referred Sokol to Joaqu n Castrillo, a senior vice-president at Integrand. Castrillo told Sokol that -4- Integrand never exercised an option to rebuild La Bolera and did not intend to do so. He instead offered New Ponce $200,000, which Sokol immediately rejected. In a subsequent letter to Sokol, Castrillo said that Integrand rejected responsibility under the insurance policy because Sokol misrepresented New Ponce's plans to demolish La Bolera and withheld the existence of a contract for demolition and of permits for a future condominium. New Ponce filed suit in district court on May 25, 1993, seeking compensation for the fire loss and damages. A bench trial was held in January and March of 1995. The presiding magistrate judge found in favor of New Ponce, and judgment was entered against Integrand for $594,787.50. That amount represents 80% of the amount of the insurance policy, less 15% pursuant to a vacancy clause in the policy. Integrand argues on appeal that it is not responsible for the loss since New Ponce was committed to demolishing the property prior to the fire. Integrand also contests the amount of damages. II. Both the district court and the parties fail to specify the jurisdiction that supplies the applicable legal rules to this case. It is important to do so because a federal court sitting in diversity is not creating general federal common law. Even where the state or territory has no controlling authority, the federal court's task is limited to predicting what the highest court of that state or territory would decide if presented with -5- the question. Nieves v. University of Puerto Rico, 7 F.3d 270, ______ __________________________ 274-75 (1st Cir. 1993). Generally, where the parties ignore choice of law issues on appeal, we indulge their assumption that a particular jurisdiction's law applies. Evergreen Marine Corp. ______________________ v. Six Consignments of Frozen Scallops, 4 F.3d 90, 95 n.5 (1st ____________________________________ Cir. 1993). But here nothing in the briefs or the record reveals any assumption other than that the district court would apply some general law of insurance unconnected to a particular jurisdiction. Thus our first task is to determine the controlling law. A federal court sitting in a diversity case must apply the choice of law rules of the forum state. Klaxon Co. v. Stentor ___________ _______ Elec. Mfg. Co., 313 U.S. 487, 496. Puerto Rico, the forum ________________ territory in this case, has approved the "dominant or significant contacts" test for contract and tort actions. A.M. Capen's Co. _________________ v. American Trading & Prod. Corp., 74 F.3d 317, 320 (1st Cir. ________________________________ 1996); In re San Juan DuPont Plaza Hotel Fire Litig., 45 F.3d ________________________________________________ 569, 576 (1st Cir. 1995). Under that test, the laws of the jurisdiction with the most significant contacts to the disputed issues will apply. 74 F.3d at 320. We have little difficulty concluding that a Puerto Rico court would apply Puerto Rico law: the insured property is located in Puerto Rico, all of the events surrounding the issues presented in this case occurred in Puerto Rico, including all of the meetings between the parties, and (from what we can discern in the record) the insurance contract -6- was entered into in Puerto Rico. We also have not located a choice-of-law provision in any of the record insurance policies. Integrand's principal argument is that New Ponce did not have an insurable interest in La Bolera at the time of the fire because it planned to demolish the building and construct a condominium in its place. We have not uncovered, nor have the parties cited to us, any applicable Puerto Rico law on the question of insurable interest in a similar context. Given the uniform approach taken in the few reported cases that have addressed the question, we conclude that the Supreme Court of Puerto Rico would adopt the approach of those courts. The insured must have an insurable interest in a property before he may recover damages under an insurance policy for destruction of that property. Chicago Title & Trust Co. v. _________________________ United States Fidelity & Guar. Co., 511 F.2d 241, 246 (7th Cir. ___________________________________ 1975). The insurable interest requirement may at first glance appear unfair to policyholders, because presumably a policyholder would not pay premiums to insure a property that has no economic value to him. But the insurable interest requirement serves three policies that would not be served by merely deferring to the policyholder's decision to pay for insurance. Requiring an insurable interest as a prerequisite to recovery prevents gambling through insurance polices, prevents rewarding and thereby tempting the destruction of property, and confines insurance contracts to indemnity. Id. at 247. ___ -7- Several courts have applied the insurable interest requirement in cases where a building is destroyed prior to demolition. The leading case is Garcy Corp. v. Home Ins. Co., ___________ _____________ 496 F.2d 479 (7th Cir.), cert. denied, 419 U.S. 843 (1974). In ____________ Garcy, the owner of a seven-story building entered a contract _____ with a wrecking company for demolition of the building. Although surrounding structures had been removed, demolition had not begun on the main building when it was destroyed by fire. The question presented was whether the owner had an insurable interest such that he could recover under several fire insurance policies. The court adopted the standard that an insured retains an insurable interest so long as the building has not been abandoned pursuant to an "irrevocable commitment" to demolition. Id. at 481; see ___ ___ also Gendron v. Pawtucket Mut. Ins. Co., 384 A.2d 694, 697 (Me. ____ _______ ________________________ 1978). The court found no irrevocable commitment to demolition and awarded damages to the owner because "the seven-story building was not in the process of demolition" when it burned. _______________ 496 F.2d at 481 (emphasis in original). A review of the cases decided both before and after Garcy will demonstrate that the "irrevocable commitment" _____ requirement is not met in the present case. Mere evidence that the insured contemplated demolition and even took steps in that direction prior to loss does not change his insurable interest in the property. For example, in American Ins. Co. v. Treasurer, __________________ __________ Sch. Dist. No. 37, 273 F.2d 757 (10th Cir. 1959) (Oklahoma law), _________________ prior to partial destruction by a tornado of a school building, -8- the insured had received bids for demolition and had in fact begun construction on a replacement building. Nonetheless, the court found for the insured, refusing to rely on "unascertained and speculative future events." Id. at 759. In Knuppel v. ___ _______ American Ins. Co., 269 F.2d 163 (7th Cir. 1959) (Illinois law), _________________ the court held that plaintiff's apparent decision to have the building, which was later destroyed by fire, demolished did not affect his insurable interest where there was testimony that he was undecided at the time of the fire whether to demolish; the court so held even though plaintiff had obtained a proposal from a contractor who offered to demolish the building. Id. at 165- ___ 166. Accord Godwin v. Iowa State Ins. Co. of Keokuk, Iowa, 27 ______ _____________________________________ S.W.2d 464, 466-67 (Mo. Ct. App.), cert. denied, 282 U.S. 880 ____________ (1930); Gendron, supra. In Leggio v. Millers Nat'l Ins. Co., 398 _______ _____ ______ ______________________ S.W.2d 607 (Tex. Ct. App. 1965), the court held that an insurable interest existed despite plans of demolition where all essential steps had not been taken prior to the fire. The lease required the lessee to submit specifications to the landlord prior to the removal of existing structures, which had not been done. Id. at ___ 611. Even where a contract for demolition is fully executed, an insurable interest in the property still exists so long as nothing has been done pursuant to the contract. American Home _____________ Fire Assurance Co. of N.Y. v. Mid-West Enter. Co., 189 F.2d 528, ___________________________ ___________________ 534 (10th Cir. 1951) (Oklahoma law) (citing additional authority); accord Garcy, supra. This is so because "it cannot ______ _____ _____ -9- be stated with certainty that [the demolition] would, in fact, be commenced . . . . Performance of the contract may have been delayed by a number of other factors . . . . So too, plaintiff could have chosen to repudiate the contract prior to demolition." Tublitz v. Glens Falls Ins. Co., 431 A.2d 201, 202 (N.J. Super. _______ _____________________ Ct. Law Div. 1981). Even where the insured is under a legal duty to demolish a building, courts have found an insurable interest. In Bailey v. Gulf Ins. Co., 406 F.2d 47 (10th Cir. 1969) ______ _______________ (Oklahoma law), the building in question had been declared a nuisance by the city and ordered demolished, but the court nonetheless concluded that the insurance company was not shielded from liability. Id. at 48-49 (citing additional authority). ___ Where courts have found no insurable interest, the facts revealed a stronger commitment to demolition than present here. In Woodruff v. Southeastern Fire Ins. Co., 426 F.2d 555 ________ ___________________________ (5th Cir. 1970) (Alabama law), the insured property burned during the process of demolition. The court held that there was no insurable interest where the facts revealed a "complete and permanent abandonment of any use of the structure of the building." Id. at 562. To the same effect are Lieberman v. ___ _________ Hartford Fire Ins. Co., 287 N.E.2d 38 (Ill. App. Ct. 1972), in _______________________ which the insured had not only signed contracts for demolition, but demolition had begun three days prior to the fire, and Deni ____ v. General Accident Ins. Co. of Am., 572 N.Y.S.2d 549 (N.Y. App. _________________________________ Div.), appeal denied, 580 N.Y.S.2d 198 (1991), in which _______________ demolition had also commenced. -10- Even the most permissive cases require that the insured has entered a binding contract under circumstances making escape from the contract difficult or unlikely. For example, in Royal _____ Ins. Co. v. Sisters of Presentation, 430 F.2d 759 (9th Cir. 1970) ________ _______________________ (California law), the owners of an old convent building moved into a new building subsequent to signing contracts that included demolition of the old building. When the old building was destroyed by fire, the trial judge awarded damages to the insured. The Ninth Circuit reversed, holding that there was no insurable interest since the contracts were all specifically enforceable: in no event would the owners have had a right to reinhabit the old building. Id. at 761-62. The existence of an ___ enforceable contract for demolition was held to eliminate the insurable interest in a property destroyed by fire in Board of ________ Educ. of Hancock County v. Hartford Fire Ins. Co., 19 S.E.2d 448 ________________________ ______________________ (W. Va. 1942). The court stated its reluctance to complicate litigation by allowing evidence of an intent to demolish where demolition had not begun, but concluded: [I]f the settled policy of the board of education, that it was legally bound to execute and the performance of which it had definitely entered upon, by the acts of the board itself, had eliminated the possible use of the . . . building, they should not be indemnified against its loss to the extent of being paid by insurer its actual going value. Id. at 450. The board of education had both signed a binding ___ contract and begun to perform that contract by notifying the builder when it would surrender possession of the property. Id. ___ -11- In the present case, there is ample evidence that New Ponce intended to demolish La Bolera. The company had taken substantial steps in that direction prior to the fire: it had obtained preliminary permits from local authorities and obtained quotations for demolition. But neither these actions nor uncontested evidence of New Ponce's actual intent to demolish La Bolera constitute an irrevocable commitment to do so. La Bolera was certainly not in the process of demolition when fire destroyed it, and New Ponce had not even entered into a binding contract for demolition. Under the reasoning of the cases cited above, New Ponce retained an insurable interest in La Bolera on January 19, 1993, when it burned. Thus the district court properly awarded damages to New Ponce under the insurance policy. Integrand also argues that the amount of damages awarded by the district court was not supported by the evidence. Integrand has not pointed to any evidence other than its assertion that New Ponce had no insurable interest to contest the court's award, and we have already disposed of that contention. As the district court fully explained, it was presented with numerous appraisals as high as $1,265,700 for the cost of rebuilding and repairing La Bolera. It reasonably decided that the most objective figure, given the range of appraisals, was the amount of the insurance policy, $699,750, which it found to represent 80% of the value of the building. It then deducted 15% pursuant to a vacancy clause in the policy and entered judgment for $594,787.50. We find no error with the district court's -12- assessment of damages and Integrand has failed to demonstrate to this Court that the award was not supported by the evidence. III. Integrand's remaining arguments do not merit discussion. For the foregoing reasons, the decision of the district court is AFFIRMED. ________ -13-