FIREMAN'S FUND INSURANCE CO. *v.* WOFFORD *et al.*

*Smith, Smith & Bloodworth* and *Wheeler & Kenyon,* for plaintiff in error.

*Joseph G. Collins* and *Boyd Sloan,* contra.

Per Curiam.   B. H. Wofford, the insured, and O. A. Carter, mortgagee named in the mortgage clause, brought suit on a policy of fire insurance issued by Fireman's Fund Insurance Company, for the total destruction of a dwelling-house and barn in the country.   The policy was issued on August 20, 1933.   A loan on the property was made on October 19, 1933, and the fire occurred on February 12, 1934.   When the loan was made Wofford notified the insurance company, and the company attached a regular New York standard mortgage clause to the policy, in which it was stated that "Loss or damage, if any, under this policy, shall be payable to the mortgagee as provided herein (O. A. Carter) as his interest may appear."   The dwelling was insured for $1,200, and the barn for $300.   On the morning after the fire Wofford orally notified the insurance company of the fire, and later made written proofs of loss under oath.   The company failed to pay, and suit was brought in the name of B. H. Wofford and O. A. Carter.   An amendment to the petition was allowed, subject to demurrer, setting out that Wofford had learned from the deed record, after the loss and proofs thereof, that the loan deed was actually made to M. B. Carter, and not to O. A. Carter; and that O. A. Carter was written in the mortgage clause because of the mutual mistake of himself and the agent of the company in thinking and believing that the loan deed was made to O. A. Carter.   There was a prayer that the mortgage clause be so reformed as to name the true mortgagee, M. B. Carter, and that M. B. Carter be made a party plaintiff.   This amendment was objected to by the company, on the ground that it added a new party and a new cause of action and

asked recovery for the new party on a changed cause of' action. The objection was overruled, and the amendment was allowed.

On the trial counsel for the defendant requested the court to submit to the jury for answer seven questions. The court submitted those questions and five additional ones. The questions and the answers were as follows:

"1. Did Howard Wofford and his family move away from the dwelling-house covered by the insurance policy sued on in this case and live elsewhere for more than ten days before the fire occurred February 12th, 1934? Answer, Yes. 2. At the time B. H. Wofford requested a mortgage clause be attached to the policy sued on, did he request that it be made to O. A. Carter or M. B. Carter? Answer, O. A. Carter. 3. Did Mr. Kimbrough, the defendant's agent, place a mortgage clause on the policy payable as requested by B. H. Wofford? Answer, Yes. 4. Did the plaintiff in this case, B. H. Wofford, have fee-simple title to the property covered by the policy of insurance sued on in this case? Answer, Yes. 5. Did M. B. Carter or O. A. Carter have any knowledge of the vacancy or unoccupancy of the dwelling-house, if it was vacant or unoccupied? Answer, No. 6. What was the amount of the loss to the property insured and damaged or destroyed by fire? Answer, $1,500. 7. Did the plaintiff, B. H. Wofford, comply with all the terms and conditions of the policy, other than the provisions with reference to vacancy or unoccupancy and fee-simple title to the property covered by the policy? Answer, Yes. 8. Was the dwelling vacant at the time of the fire? Answer, No. 9. If so, how long had it been vacant? Answer, No time. 10. Was the dwelling unoccupied at the time of the fire? Answer, No. 11. If so, how long had it been unoccupied? Answer, No time. 12. Should the mortgage clause attached to the fire insurance policy be reformed? Answer, Yes."

Questions 8 to 12, inclusive, were submitted to the jury over objection of the defendant. The above findings constituted the verdict. The defendant moved for a decree in its favor, which was refused, and the court entered up a decree in favor of the plaintiffs for a reformation of the mortgage clause, and that the plaintiffs recover of the defendant $1,500. The defendant's motion for new trial was overruled, and it excepted.

■ Error is assigned upon the judgment overruling the defendant's demurrer to an amendment offered by plaintiffs, seeking to reform the mortgage clause of the policy so as to make it read "payable to M. B. Carter" instead of "O. A. Carter," and to recover on the policy under the mortgage clause as so reformed. The court did not err in allowing the amendment over the objections. The negotiations for the loan in consequence of which the mortgage clause was attached were with O. A. Carter, but the money ·was actually advanced by his father, M. B. Carter, who was entitled to have the money paid to him to the extent of his interest. It would have been highly inequitable to refuse allowance of this amendment. The defendant was not in the least hurt or damaged thereby. The owner of the property was mistaken when he had the name of O. A. Carter inserted in the mortgage clause, and the defendant's agent did not know who was the proper party, and in inserting the name of O. A. Carter he was under an impression gained from the owner, and they were both mistaken; and it·should be treated as a mutual mistake authorizing a reformation.

■ The ruling in the second headnote requires no elaboration.

■ In the policy of insurance there is the provision that "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days." The tenant in possession of this property under a contract with the owner left the house with his family seventeen days before the fire, but he left in the house a bedstead and springs, fifteen or twenty books constituting his little library, and a few old chairs. There was evidence to the effect that the insured knew the tenant was moving out, and that he had another tenant ready to move in as soon as the first tenant finished moving. The first tenant still had the keys to the house, and had not given up the house to the owner. We are of the opinion that as the tenant had moved out so short a time before the fire, leaving a part of his furniture and his books in the dwelling, this did not void the policy under the provision that if the house should become vacant or unoccupied for ten days the policy would be voided. In 14 R. C. L. 1103, it is said: "A fair and reasonable construction of the language

of vacant and unoccupied is, that a building should be without an occupant—without any person living in it. The language is not used in a technical, but popular sense. It is not essential that some one sleep in a dwelling, to render it occupied. In construing a condition against vacancy or unoccupancy, the courts will look to the subject-matter of the contract. The occupancy of a dwelling, of a mill, or of a barn, is each essentially different in its scope and character, and the construction must be with reference thereto. Whether a building is vacant or unoccupied at the time a loss by fire occurs is a question of fact for determination by the jury." In Dennison v. Phœnix Insurance Co., 52 Iowa, 457 (3 N. W. 500), it was said: "The contract must receive a reasonable construction. The parties did not intend that one tenant should not move out and another move in, nor did they intend that the house should be deemed vacant if the occupant should close it and go off on a visit and not occupy it for a reasonable time. If such a rule should obtain, insurance on dwelling-houses would be of little value to the insured." It was said in Eddy v. Hawkeye Ins. Co., 70 Iowa, 472 (30 N. W. 808, 59 Am. R. 444): "In the case of Shackelton v. Sun Fire Office, 55 Mich. 288, the house was occupied by a tenant, who vacated on June 19, 1883. The owner took possession, put her furniture in building, but for what seemed to be good reasons she did not take her meals' or lodge in the house, and same was destroyed by fire on the fourth day of July. The period in which the house was not occupied was much longer than in case at bar. It was held that the house was not vacant or unoccupied, within the meaning of the contract." In 19 Cyc. 730, 732, it is said: "The fact that furniture was left keeps the premises from becoming vacant, and with a few added facts, as for instance that the absence is temporary, may assist in showing an occupancy." And it is said, under the caption building intended for rental: "Somewhat different questions arise from those foregoing when dwelling. or other building insured is intended to be rented. If the insurer is cognizant of the purpose to which the structure is to be put, he must be aware that an occasional vacancy will be a necessary incident to such use. Consequently a temporary vacancy of such premises so described merely incident to a change of tenants will not avoid the policy which prohibits vacancy or non-occupancy under penalty of for-

feiture. Such a vacancy must not, however, go on for an unreasonable length of time; although it has been held that even though a long period of time had intervened, the insured was protected if he used all reasonable exertions to procure another tenant." In Ohio Farmers Ins. Co. v. Vogel, 166 Ind. 239 (76 N. E. 977, 3 L. R. A. (N. S.) 966, 117 Am. St. R. 382), it was held that vacancy provisions in a fire policy should be construed with relation to the character of the property insured, and should not have the same interpretation when applied to houses to be occupied by owner as to houses to be occupied by tenants. And it was said that if the policy is taken on tenement property, a provision that the policy is voided if property becomes vacant, will operate "only after a reasonable time has elapsed in which to obtain other tenants." See also Moody v. Amazon Insurance Co., 52 Ohio St. 12 (38 N. E. 1011, 26 L. R. A. 313, 49 Am. St. R. 699). We find no case decided by this court defining what would constitute vacancy or unoccupancy similar to the instant case; but it seems reasonable, and in accordance with the authorities quoted above, to hold that there is no such violation of the vacancy or unoccupancy clause as to render this policy void. The court did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur, except Beck, P. J., and Bell, J., who dissent, and Gilbert, J., absent.*