**Dr. Gerald G. WOODRUFF, Jr., et al.,**
**Plaintiffs-Appellees,**

v.

**SOUTHEASTERN FIRE INSURANCE**
**CO., Defendant-Appellant.**

**No. 27299.**

United States Court of Appeals,
Fifth Circuit.

April 22, 1970.

Joseph S. Mead, Birmingham, Ala., for defendant-appellant.

Gilbert E. Johnston, Sydney L. Lavender, Birmingham, Ala., Cecil H. Young, Jr., Anniston, Ala., for plaintiffs-appellees.

Before RIVES, COLEMAN and MORGAN, Circuit Judges.

RIVES, Circuit Judge.

The Fire Insurance Co. appeals from a judgment for $35,000.00 against it in favor of Dr. and Mrs. Woodruff. The issues on which the case was tried in the district court are succinctly stated in the order on pretrial hearing as follows:

"It was agreed by all of the parties that the following are all of the issues in controversy in this cause:

"Plaintiffs claim of defendant the sum of $42,800 under a policy of fire insurance issued to them by defendant against direct loss and damage by fire of their dwelling house for the term of two years from October 1, 1966. Plaintiffs contend that on October 3, 1967, such dwelling house was damaged directly by fire in the amount complained of.

"Defendant insists that on the occasion of such fire the subject matter of insurance had ceased to exist. It contends that prior to the fire plaintiffs had negotiated a sale of their land and dwelling house to the City of Anniston for the purpose of constructing a school thereon; that in such contract plaintiffs had reserved an option to remove such dwelling house from the land whereon it was situated to a different location; that on the occasion of such fire their house, pursuant to the exercise of such option, was being demolished with the announced intention of reconstructing it on another lot owned by plaintiffs; that on the date of the fire plaintiffs had no insurable interest in the house being demolished as a dwelling house, and that the hazard was increased by the process of demolition.

"In reply, relying upon principles of waiver and estoppel, plaintiffs insist that they advised a general agent of defendant of their intention to dismantle the house and remove it to another location, who in turn advised plaintiffs that the policy of insurance was effective to cover such house during the process of demolition and removal and that no other insurance was needed by them until such house had been reconstructed. At the pretrial conference the court advised counsel of the tentative opinion that under the foregoing facts the subject matter of insurance as a dwelling house was in existence at the time of the fire; that plaintiffs had an insurable interest therein, and that the measure of damages under the policy sued on would be the fair market value of such house immediately before it was damaged by fire less the cost of dismantling and reconstructing it."

After a full trial, the court charged the jury that, as a matter of law, at the time of the fire the structure was a dwelling house and was covered by the policy of insurance. The issues submitted to the jury were the defendant's claim that the hazard was increased by the process of demolition, the plaintiffs' reply that the defendant was estopped

from insisting upon that defense by the conduct of its agent in informing the plaintiffs that the policy would remain in effect during the process of demolition, and, lastly, the amount of recovery. On appeal the insurance company expressly waives any review of the increase in hazard defense, and presents only three issues:

1. Was the structure being dismantled for removal covered by the policy of insurance;

2. Was error committed by the court in its instructions to the jury as to the standards for calculating the amount of recovery; and

3. Was the verdict of the jury excessive in amount?

### Coverage.

The dwelling was considered a landmark in the City of Anniston, designed about 1881 by the famous architect Stanford White, and constructed for Samuel Noble, one of the founders ·of Anniston. Dr. and Mrs. Woodruff acquired the dwelling in 1965. On October 1, 1966 the Fire Insurance Co. issued to Dr. and Mrs. Woodruff its "Homeowner's Policy" of insurance describing the premises as located at "1301 Woodstock Avenue, Anniston, Calhoun County, Alabama," fixing the limit of liability on the "dwelling" at $50,000.00 and insuring for the term of two years to an amount not exceeding $50,000.00

"to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair; and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the insured, against all DIRECT LOSS BY FIRE, LIGHTNING AND OTHER PERILS INSURED AGAINST IN THIS POLICY INCLUDING REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described herein while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere."

Other pertinent provisions of the policy are:

"[T]his Company shall not be liable for loss occurring

"(a) while the hazard is increased by any means within the control or knowledge of the insured; or

"(b) while a described building, whether intended· for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days * * *.

"This policy covers: (a) the building described, including *additions in contact therewith, occupied principally for dwelling purposes* * * *."

In a separate section the policy insured "unscheduled personal property usual or incidental to the occupancy of the premises as a dwelling * * *, while on the premises" to a limit of $20,000.00. When the policy was issued, the Woodruffs and their family owned the dwelling and resided there.

The Anniston Board of Education sought to acquire the property and surrounding property for the purpose of erecting a high school, and on about January 4, 1967 the Woodruffs and the Board agreed on a sale price of $80,000.-00. On September 8, 1967 the Woodruffs conveyed the property by warranty deed to the Board. The deed provided that, "Grantors reserve the right to use and occupy said property until October 1, 1967." Shortly before the execution and delivery of the deed, the

Board and the Woodruffs entered into a separate written agreement "on possession and other related matters," which in pertinent part provided as follows:

"2. The aforesaid deed of conveyance shall reserve possession to Vendors until October 1, 1967. Parties hereto agree that Vendors may retain possession until said date, and Vendors hereby agree to vacate said premises on or before said date, being tenants by sufferance of Purchaser after said date.

\* \* \* \* \* \*

"4. From and after the time conveyance is delivered to Purchaser, Vendors shall carry insurance on the dwelling house on said property at their own expense, if they wish so to do.

"5. Vendors reserve the right to remove the dwelling house on said property, provided, however, that such removal down to foundation wall and all debris shall be accomplished by December 15, 1967. In the event Vendors decide not to remove said dwelling house, they will advise Purchaser in writing of their decision not to remove same by delivery of notice to Purchaser's attorneys, Knox, Jones, Woolf & Merrill, on or before October 1, 1967."

On September 25, 1967 the Woodruffs moved out of the house, and their contractor began the work of dismantling the structure preparatory to rebuilding at a new location several miles distant. Dr. Woodruff testified that they "wanted the same house on the new site." The dismantling had been in progress for only about a week before the fire occurred on October 3rd.

The plan was to remove the house in large component parts. Prior to the fire the following items were removed from the building and stored in a warehouse: much of the interior trim and most of the interior doors, nearly all of the lighting fixtures, some of the mantles, all of the shutters or blinds, and about two-thirds of the aluminum sid-ings. All contents of the building, such as furniture and personal effects, had been removed.

As has been stated, the district judge decided as a matter of law that at the time of the fire the structure was covered by the policy of insurance. Specifically, he instructed the jury as follows:

"There was testimony in this case from Mr. Weatherly, a general agent of the defendant insurance company, that he had stated to Dr. Woodruff and to others that the insurance policy did cover this building at the time of the fire. Unless the contract actually covered—the agreement between the parties actually covered it, the general agent could not breathe life into that policy. You are not to be concerned with the statement of Mr. Weatherly insofar as coverage is concerned. It has in my view become a question of law, that is to say, was the subject matter of insurance actually in existence at the time of the fire. If this case had been one where there was a dispute as to whether or not the owner of the dwelling house intended to dismantle it, remove it and reconstruct it, if there had been any question of facts raised in this evidence as to what their intentions were, I would have submitted that to the jury. But the evidence in this case is wholly undisputed this lot owned by the plaintiffs and the dwelling house on that lot had been sold by the plaintiffs to the City Board of Education of the City of Anniston for school purposes and they had paid the plaintiffs. There was a contract between the plaintiffs and the City Board which permitted them within a fixed period of time, and you will have the contract before you, to remove the dwelling house from the property. They had that right given to them by contract to remove the house in any manner they saw fit within a given period of time. I think the evidence is undisputed that they clearly intended to have this house moved from that location in Anniston on Woodstock Ave-

nue to other property which they owned and reconstruct it just as it had been before on that new property and since the evidence is undisputed and so clear as to what their intentions were, I charge you as a matter of law at the time this fire occurred on October 3 that this structure on the Woodstock lot was a dwelling house and was covered by the policy of insurance."

■ The plaintiffs could hardly be expected to object to the court's announced reasons for giving that instruction in their favor. Nor should the district court's rationale be treated as the law of the case to the extent of limiting the power of this Court to review its *decision* and to avoid a miscarriage of justice.[1] We conclude in this case that the plaintiffs are not precluded from urging any reason which would support the effect of the court's instruction.

■ However, applying the law of Alabama, we agree with the learned district judge that the statements of Mr. Weatherly, the agent of the insurance company, could not extend coverage and that the question is whether the insurance policy itself covered the building at the time of the fire.

The written agency agreement between the Southeastern Fire Insurance Co. and Weatherly Insurance Company, Inc. provided in pertinent part that:

"[T]he Company hereby grants authority to Agent to receive and accept proposals for such contracts of insurance covering risks on properties located in State of Alabama as the Company has authority lawfully to make * * *.

    *    *    *    *    *    *

"Agent has full power and authority to receive and accept proposals for insurance covering such classes of risks as the Company may, from time to time, authorize to be insured; to collect, receive and receipt for premiums on insurance tendered by the Agent to and accepted by the Company and to retain out of premiums so collected, as full compensation on business so placed with the Company, commissions at the following rates * * *."

The document is headed "Agency Agreement" and designates the Weatherly Insurance Company simply as "Agent". Mr. Weatherly testified that the "General Agent we deal with on Southeastern policy is Chandler General Agency, Birmingham, Alabama." The Weatherly Company, however, writes and countersigns policies for Southeastern Fire Insurance Co., and had countersigned the policy sued on.

Mr. Weatherly testified that "a couple of weeks before" the dismantling began he had told Mr. Rush, "the contractor tearing the house down and building the new house," that the "Homeowner's" Policy would cover the house while being dismantled. Mr. Weatherly further testified positively that on the Friday before the fire Dr. Woodruff told him the house was being dismantled and he told Dr. Woodruff that he was covered by the policy of insurance on the house until he returned the policy for cancellation; that further, "There at the scene of the fire, do you recall a conversation with Dr. Woodruff as to whether or not this house was covered under the existing policy? And your answer was, 'Yes, sir, I assumed that it was.' 'Did you so tell him?' And you answered, 'Yes, sir.' A. Yes, sir."

Mr. Weatherly's testimony was relevant on the issue of whether the Fire Insurance Co. was estopped from claiming as a defense that the hazard was increased by the process of demolition. As has been stated, that defense is not

1. *See* Messenger v. Anderson, 1912, 225 U.S. 436, 437, 32 S.Ct. 739, 56 L.Ed. 1152; 1B Moore's Federal Practice ¶ 0.404[9].

an issue on this appeal. Under Alabama law his testimony was not relevant on the question of whether the building being dismantled was covered by the policy of insurance. The rule has been most succinctly stated in Mooradian v. Canal Insurance Company, 1961, 272 Ala. 373, 130 So.2d 915, 920:

"The unvarying rule is that coverage under an insurance policy cannot be enlarged by waiver or estoppel, since such doctrine can only have a field of operation when the subject matter is within the terms of the contract. Fidelity Phenix Fire Ins. Co. of New York v. Raper, 242 Ala. 440(6), 6 So.2d 513."[2]

We thus agree with the district judge that coverage of the policy cannot be extended or enlarged under the principles of waiver or estoppel by any statements of Mr. Weatherly, the agent. Rather, as we perceive the case, the pertinent inquiry is whether at the time of the fire the structure was covered by the policy of insurance.

Apparently the question is almost unique. The case cited by the appellees which seems most nearly in point on the facts is State Farm Fire & Casualty Co. v. Ward, Tex.Civ.App.1963, 364 S.W.2d 771. The decision in that case was based upon Texas statutes and precedents under which the insured's local recording agent had authority to agree that the policy would cover the house while it was being dismantled, a principle diametrically opposite to what we have just found to be the law in Alabama. The case cited by the appellant which seems most directly in point on the facts is Nave v. Home Mutual Insurance Co., 1866, 37 Mo. 430. That case differs from this in that there the building was not being voluntarily dismantled, but it actually collapsed before the

fire occurred. The Missouri court held that coverage had ceased, saying:

"The subject insured has ceased to exist as such, and became a mere congeries of materials before the fire occurred, and by reason of a cause not insured against by the policy * * * the materials were not insured. The building insured no longer existed as such, and it ceased to exist by reason of a peril not insured against."

In the present case photographs of the structure while on fire appear to exhibit a complete building. The demolition had not progressed very far and the outer framework of the structure was largely intact. Much of the interior, however, had been removed, and all use of the building as a dwelling or for any other purpose at the location described in the policy had definitely and finally terminated.

The policy contract when issued covered the Woodruffs' interest in a dwelling at a particular location, owned and occupied by the Woodruffs when the policy issued. The Woodruffs had sold and conveyed the premises to the Board of Education, reserving temporary possession and a limited right to remove the building. They had vacated the building not temporarily, as might be permitted by the vacancy clause of the policy, but permanently and irrevocably. The building was being dismantled; some parts of it had already been removed and warehoused. There is no claim that those parts are covered by the policy. It would be impossible to remove and reuse other parts, such as plumbing, wiring, roofing, plastering, foundation, etc. Those parts, because the Woodruffs had no further interest in them, cannot be covered by the policy. The interest of the Woodruffs had changed from ownership of a dwelling house, real property,

2. To like effect, see Inland Mutual Insurance Co. v. Hightower, 274 Ala. 52, 145 So.2d 422; United Marine & General Insurance Co. v. Holmes, 249 Ala. 294, 31 So.2d 303; Home Insurance Co. of New York v. Campbell Motor Co., 227 Ala. 499, 150 So. 486; Odum v. Penn. Mutual Life Ins. Co., 5 Cir. 1961, 288 F.2d 744.

to a limited right of removal and ownership of building materials, personal property.[3] The application of the originally agreed on standard of recovery[4] had become partly inappropriate, and the district court instructed the jury that in determining the loss it could consider the availability of portions which had been removed from the structure and stored in the warehouse and what it would have cost to dismantle and remove the structure from its then location and transport it to the new location where the dwelling was to be reconstructed. There is a question as to whether such complicated and difficult items of proof should be imposed on the insurance company in the place of the originally agreed on simple standard for determining loss.

The district judge in his charge to the jury placed critical importance on the intention of the Woodruffs to "dismantle it, remove it and reconstruct it." We do not agree with that rationale. The policy coverage was definitely limited "to the property described herein while located * * * as described in this policy." The insurance company could not be required to continue its coverage after the property had been removed to a location miles distant and subject to different fire hazards. Nor could the Woodruffs' intent to so remove the materials and reconstruct the building operate to retain coverage.

■■ It could be argued that coverage ceased when the Woodruffs sold and conveyed the premises to the Board of Education, reserving only a temporary possession and a right to remove the building.[5] We think that the answer to any such argument is that the policy contained no provision or condition that coverage would cease in case of a change in the interest, title or possession of the property insured without the insurance company's consent.[6] In the absence of some such provision, a change of title as to the property insured does not void the policy unless it increases the risk of loss (a matter which the insurance company concedes has been finally determined against it), or unless the insured no longer has any insurable interest in the property.[7] Clearly, the Woodruffs had an insurable interest in the structure at the time of the fire.[8]

■ The insurance company argues, however, that the nature of the use of the property had also radically changed, and that is certainly true. Instead of being used as a dwelling or for any other purpose, there was no use of the structure as a building, but it was being dismantled. The Woodruffs' counsel argue that here again the answer lies in the provisions of the policy itself. We agree with their contention that the statements in the policy referring to the structure as "a dwelling," "a dwelling

---

3. In its charge to the jury the district court posed the inquiry: " * * * did that structure as it stood on that lot *as personal property* have a fair cash market value * * *." (Emphasis added.)

4. The actual cash value of the property at the time of loss, not exceeding the amount which it would cost to repair or replace the property.

5. A right which would be classified as personal property under Alabama law. Powers v. Harris, 1880, 68 Ala. 409; Roberts v. Caple, 1913, 8 Ala.App. 444, 62 So. 343; Cochrane v. McDermott Advertising Agency, 1912, 6 Ala.App. 121, 60 So. 421.

6. Such a provision would have been reasonable. North River Ins. Co. v. Waddell, 1927, 216 Ala. 55, 112 So. 336.

7. 43 Am.Jur.2d Insurance § 865; 45 C.J. S. Insurance § 564.

8. "The principle may be stated generally that anyone has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction, whether he has or has not any title in, or lien upon, or possession of, the property." 43 Am.Jur.2d Insurance § 466, pp. 507, 508. *Accord*: Commercial Fire Insurance Co. v. Capital City Ins. Co., 1886, 81 Ala. 320, 8 So. 222; Planters' & Merchants' Ins. Co. v. Thurston, 1891, 93 Ala. 255, 9 So. 268.

house" or "occupied principally for dwelling purposes" relate to the time of the issuance of the policy and do not operate to prohibit other uses so long as no condition of the policy is broken, such as that relating to vacancy or to increase of risk.[9]

Fire insurance policies are, of course, carefully prepared and written in the light of the many interpretations of various clauses and provisions over a long period of time. However, in no case brought to our attention or which our research has disclosed has coverage been held to continue after such radical changes, both in the interest of the insured and in the use and occupancy of the building, had resulted in a complete and permanent abandonment of any use of the structure as a building. Those changes had caused the structure to cease to exist as a part of the premises or real property and to become personalty, no more than building materials, albeit retaining the outward hull or form of a building. For any use at the location to which the insurance was confined the building as such had ceased to exist before the fire occurred. There was never any contract to insure building materials.

Under all of the facts and circumstances of this case, we are forced to the conclusion that the Woodruffs' limited interest in the structure as it stood at the time of the fire was not what the insurance company had contracted to insure.[10] The judgment is therefore reversed with directions to enter judgment for the defendant.

Reversed with directions.

---

9. 43 Am.Jur.2d Insurance § 936; 45 C.J.S. Insurance § 551, p. 293 n. 27; *see* Trinity Universal Ins. Co., Dallas, Tex. v. Wills, 1962, 273 Ala. 648, 143 So.2d 846. Compare the provisions looking to the future in Fidelity Phenix Fire Ins. Co. of New York v. Raper, 1942, 242 Ala. 440, 6 So.2d 513 and Home Ins. Co. v. Currie, 5 Cir. 1931, 54 F.2d 203.

10. That being true, we do not reach the other two issues seriously urged by the appellant insurance company, *ante.*