73657. UNITED STATES FIRE INSURANCE COMPANY
v. COWLEY & ASSOCIATES et al.
(359 SE2d 160)

BENHAM, Judge.

Appellant, United States Fire Insurance Company ("U. S. Fire") issued a policy of aviation insurance to appellee Cowley & Associates for a private plane that the company owned. The policy Mr. Cowley selected covered "personal and pleasure use and use in direct connection with the insured's business, excluding any operation for which a charge is made." Cowley used a pilot, Jeff McConnell, who flew the plane for Cowley as an independent contractor and also flew it with Cowley's permission for his own business endeavors. During a return flight from Lexington, Kentucky, to Georgia, the plane crashed, killing McConnell and his passengers. U. S. Fire filed a declaratory judgment action seeking to avoid liability to pay the claims filed under the policy, its position being that the operation was one for which a charge had been made. U. S. Fire contended that the flight was part of a charter operation McConnell had been running. After several motions for summary judgment had been made and denied and a trial that resulted in a hung jury had taken place, appellees filed another motion for summary judgment, which the trial court granted. U. S.

Fire appeals, enumerating as error the grant of summary judgment and the construction of the operative exclusion as requiring that actual payment be made by the passengers to the insured prior to the incident out of which a claim arises.

Appellant contends that although McConnell charged his passengers a rate much lower than that of a regular charter service, he was using the insured plane to run a charter operation, thus excluding it from coverage. It reached that conclusion based on the testimony of a former passenger that after a round-trip flight had been completed, McConnell would calculate and solicit payment in various amounts from some of his passengers, and that the passengers would make payment to Sports Air Flights, Inc., McConnell's company. More specifically, U. S. Fire relies on the fact that this same procedure was followed after an earlier flight McConnell made to a construction site in Lexington, Kentucky, with some of the same passengers who were on the fatal flight. However, there is no direct evidence that this or any other payment arrangement was used on the flight in question; appellant would have us infer that such an arrangement had been made in light of the parties' previous conduct.

Appellant further argues that the contract provision "excluding any operation for which a charge is made" is unambiguous when read in the context of the whole policy and that it means that "coverage will not extend to flights where payment for the flight in any amount is contemplated to be made from one to the insured or pilot."

It appears that this is the first time we have been called upon to interpret the language of this contract provision. To do so, we must examine whether the trial court applied the three-step process of contract construction, i.e., decide whether the contract language is ambiguous; if it is, then apply the applicable rules of construction (OCGA § 13-2-2); and if an ambiguity still remains, the jury must resolve it. *Travelers Ins. Co. v. Blakey*, 180 Ga. App. 520 (349 SE2d 474) (1986). Utilizing this process, we find that the contract provision is unambiguous, but we do not find that it means what appellant contends it does. Appellant's interpretation is more broad than the words of the policy indicate it was intended to be. The phrase "a charge is made" is not synonymous with "payment . . . contemplated to be made. . . ." If the latter phrase is what appellant intended, it should have used those words. We read "a charge is made" to mean that the person offering a service puts the recipient on notice that there will be some amount assessed against him for providing that service; in other words, the service would not be provided for free. Appellant's definition would exclude such transactions from coverage but would also exclude those transactions in which the recipient of the service took it upon himself to pay for the service even if it were not required by the provider or the insured. Even if we were to accept appellant's

interpretation, there is no evidence that the passengers on the fatal flight contemplated making payment to Cowley or McConnell or that either of them expected to receive payment.

Since all of the passengers died in the crash, none was available to testify whether or not arrangements had been made for payment for the flight. There were no invoices, memos, bills, pre-flight charges, or other documents or testimony evidencing a charge made by McConnell for the flight or the intention of the passengers to pay any amount to McConnell for the flight. In his deposition Cowley testified that he did not make and has not made a charge relative to the operation of his plane on the fatal flight; that using the plane as a charter for profit was strictly prohibited; and that it was never used in that way as far as he knew. Cowley further testified that McConnell had his own construction management company and was an architect with a substantial engineering background, and that he allowed McConnell to use the plane for McConnell's architectural, engineering, draftsman, and construction management work. Cowley said he did not receive cash reimbursements for allowing McConnell to use the plane; instead, McConnell repaid him by piloting him free of charge. Regarding the fatal crash flight, Cowley said McConnell was acting on Cowley's behalf to show some of the passengers the plane's capabilities. Cowley was exploring the possibility of having one or more of the passengers buy a share of the plane for their use because Cowley was not using the plane enough to justify the cost; and prior to the flight, there had been a meeting at which the matter was discussed. Another objective of the flight was for McConnell to investigate, on Cowley's behalf, the possibilities of work at the Lexington, Kentucky, site for Cowley's company. McConnell had indicated to Cowley that he might be interested in having Cowley & Associates become involved in the remodeling being done at the Lexington site. These circumstances differed from those surrounding McConnell's first round-trip flight to Lexington, Kentucky.

Appellant has not produced any evidence to contradict Cowley's testimony, only the implication that there would have been a charge imposed by McConnell had the flight been completed, because he had done so in the past. There being no ambiguity of contract terms, and appellees having met their burden, as the movants for summary judgment, to show affirmatively that the flight in question was one for which no charge was made, and appellant having failed to present evidence to meet its burden of contradicting appellees' proof, the trial court did not err in granting summary judgment to appellees. *Fort v. Boone*, 166 Ga. App. 290 (304 SE2d 465) (1983).

*Judgment affirmed. Banke, P. J., and Carley, J., concur.*

DECIDED JUNE 8, 1987 —
REHEARING DENIED JULY 1, 1987 — 

*Sewell K. Loggins, Michael V. Elsberry, Brian J. Morrissey*, for appellant.

*A. Russell Blanks, Winnie P. Pannell, Glover McGhee, M. Charles Lokey, Alexander J. Repasky, T. Cullen Gilliland, Gregory E. Stuhler*, for appellees.