Harold R. CRAWFORD, Plaintiff,

v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY, Defendant.

No. CV 590–284.

United States District Court, S.D. Georgia, Waycross Division.

June 26, 1991.

John R. Thigpen, Sr., Blackshear, Ga., for plaintiff.

Clayton H. Farnham, Barbara Jo Call, Drew, Eckl & Farnham, Atlanta, Ga., for defendant.

## ORDER

EDENFIELD, Chief Judge.

### I. Summary Judgment

The plaintiff, Harold R. Crawford ("Crawford"), brought this suit for $69,-074.07 in damages in Ware County Superior Court alleging that the defendant, Government Employees Insurance Company ("GEICO"), failed to honor its fire insurance contract with him after a fire occurred in a rental dwelling owned by Crawford and purportedly covered by a GEICO policy. The defendant removed the case to this Court under the provision for diversity jurisdiction, 28 U.S.C. § 1332 (1988). Subsequently, the defendant moved for summary judgment on the ground that, as a matter of law, Crawford's use of the premises did not comply with the coverage provision contained in the GEICO–Crawford fire insurance policy. The policy limits coverage to premises "used principally for dwelling purposes." The Court rejects this argument. GEICO's motion for summary judgment is therefore DENIED.

## BACKGROUND

Unless otherwise noted, the facts presented in this order are derived from the plaintiff's affidavit and his deposition testimony. On March 29, 1966, the plaintiff, Harold R. Crawford, and his wife purchased the premises at 1005 Gilmore Avenue in Waycross, Georgia ("the premises"). Crawford and his wife resided at the premises from 1966 until 1969, when they left Waycross to work for the United States government in the Panama Canal Zone. During the following 19 years, the Crawfords rented the premises to a series of different tenants.

The premises were damaged by fire on January 29, 1990. At the time of the fire, no one was actually living at the premises. The previous tenant, Marjorie Hickox, resided at the premises from March or April 1988 until approximately one month before the fire. Hickox ceased living at the premises when her car burned in the driveway at the end of November, in an unrelated fire. According to Hickox's deposition testimony, after the car fire, she was too frightened to remain at the premises. She did, however, return to the premises eight or nine times after the car fire to move her personal belongings out of the house and clean the rooms. In January 1990, when the premises burned, several of Hickox's belongings remained at the premises, including her divorce papers, photographs, and clothing. Hickox also had a key to the premises on the date of the fire.

In December of 1989, after Hickox ceased living at the premises, a water pipe in the shower froze and then burst. Because of the Christmas holidays and the fact that Hickox was not living at the premises, Crawford decided not to repair the pipe immediately. Instead, he simply turned the water off at the street meter to prevent any further damage. He did not turn the other utilities off at that time. In her deposition testimony Hickox states that sometime in the week of January 19th, less than ten days before the fire, she encountered Crawford and Johnny Strickland (one of Crawford's former business partners) at the premises working on the bathroom pipes.

The premises were covered by a fire insurance policy between Crawford and GEICO, with an effective date of April 11, 1989. After the fire, GEICO refused to reimburse Crawford for the loss caused by the fire. At a status conference held in this court on April 19, 1991, the parties stipulated that arson caused the fire. In its summary judgment motion, GEICO argues that it is not required to pay Crawford for fire loss because the exact terms of the policy were not met.

In support of this claim, GEICO points to the "Coverages" section of the policy which indicates that the policy covers "the dwelling on the Described Location, used principally for dwelling purposes". No defini-

tion of the phrase "used principally for dwelling purposes" is contained in the policy. Further, the GEICO–Crawford insurance policy does not include a provision, often present in fire insurance policies, which would suspend coverage of the insured premises for fire loss if the insured premises became vacant. GEICO's broad form insurance contract does, however, contain so called "vacancy exclusion" provisions for other perils (e.g., burglary and vandalism or malicious mischief) for which GEICO offers insurance.

## ANALYSIS

■ The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Advisory Committee Note). The Court "must determine whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law." *Warren v. Crawford*, 927 F.2d 559, 561 (11th Cir.1991); *Regan v. United States Small Business Admin.*, 926 F.2d 1078, 1080 (11th Cir.1991) (both citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Thus, summary judgment is appropriate where the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The substantive law governing the action determines whether an element is essential. *E.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202; *DeLong Equip. Co. v. Washington Mills Abrasive Co.*, 887 F.2d 1499, 1505 (11th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1813, 108 L.Ed.2d 943 (1990). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *see Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir.1990). The movant typically must discharge this burden by producing evidence that negates an essential element of the nonmovant's claim. *E.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). In some circumstances, however, the movant may meet this burden by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Coats & Clark*, 929 F.2d at 608; *see Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

If the movant successfully discharges this initial burden, it is then the nonmovant's burden to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir.1987). "Factual disputes that are irrelevant or unnecessary will not be counted." *United States v. Gilbert*, 920 F.2d 878, 883 (11th Cir.1991) (citation omitted). The nonmovant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Liberty Lobby*, 477 U.S. at 257, 106 S.Ct. at 2514; *Gilbert*, 920 F.2d at 882. This means that the nonmovant "must set forth specific facts showing that there is a genuine need for trial." *Johns v. Jarrard*, 927 F.2d 551, 555 (11th Cir.1991) (citation omitted).

In assessing whether the movant is entitled to summary judgment in its favor, the district court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmoving party. *E.g., Regan*, 926 F.2d at 1080; *Gilbert*, 920 F.2d at 882. A mere "scintilla" of evidence supporting the opposing party's position, however, will not suffice. *E.g., Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990). "Where the

record, taken as a whole could not lead a rational trier of fact to find for the nonmoving party, then there is no genuine issue for trial." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512; *Johns v. Jarrard*, 927 F.2d 551, 556 (11th Cir.1991). The evidence need not be in a form that would be admissible at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). The Court, however, must avoid weighing conflicting evidence, *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513–14; *Brown v. Hughes*, 894 F.2d 1533, 1536 (11th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 2624, 110 L.Ed.2d 645 (1990); *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir.1986), or making credibility determinations. *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513–14; *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 934 (11th Cir.1987). At bottom, "where the facts specifically averred by [the nonmovant] contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. National Wildlife Fed.*, — U.S. —, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990). As discussed below, GEICO has failed to meet its burden of demonstrating that no genuine dispute exists as to any material fact in this case as required by Rule 56 of the Federal Rules of Civil Procedure.

## II. Interpretation of Insurance Contracts

In its motion for summary judgment, GEICO concludes that it is entitled to summary judgment, and states: "there is no coverage for plaintiff's house under the policy at issue, because that house was vacant at the time the fire occurred, and, thus, not being used principally for dwelling purposes." The determination of the scope of this coverage provision, however, is more complicated than GEICO's assertion suggests.

Because jurisdiction of this matter is based on diversity of citizenship, the Court must decide both the meaning of the phrase "used principally for dwelling pur-poses" and its application to the Crawford premises in accordance with the substantive law of Georgia. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). As a federal court sitting in diversity, this Court must construe any issue of state law as it believes the Supreme Court of the state would. *Royal Health Care Services, Inc. v. Jefferson–Pilot Life Ins. Co.*, 924 F.2d 215, 216 (11th Cir.1991); *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir.1990).

Ordinarily, interpretation of contract is a question of law for the Court to resolve. O.C.G.A. § 13–2–1 (1982). A court's primary goal in interpreting any contract, including an insurance policy, is to ascertain the parties' intent. O.C.G.A. § 13–2–3 (1982); *see Fidelity & Deposit Co. v. Sun Life Ins. Co. of Amer.*, 174 Ga.App. 258, 260, 329 S.E.2d 517 (1985); *Purcell v. Allstate Ins. Co.*, 168 Ga.App. 863, 864, 310 S.E.2d 530 (1983). This Court has recently relied on a three-step test developed by the Georgia courts to determine the parties' intent. *See State Farm Mut. Auto. Ins. Co. v. J.H. Stanley*, No. CV 489–254, slip op. at 6–7 (S.D.Ga. Mar. 18, 1991); *see also Dickens v. Principle Mut. Life Ins. Co.*, No. CV 487–130, slip op. at 4, 1987 WL 109904 (S.D.Ga. Nov. 18, 1987) (available on Lexis).

Under this three part test, a court must "decide whether the contract language is ambiguous; if it is, then [the court must] apply the applicable rules of construction; and if an ambiguity still remains, the jury may resolve it." *United States Fire Ins. Co. v. Cowley & Assoc.*, 183 Ga.App. 478, 479, 359 S.E.2d 160 (1987); *see Copy Sys. of Savannah, Inc. v. Page*, 197 Ga.App. 435, 436, 398 S.E.2d 784 (1990); *Dickens*, slip op. at 4. Thus, before submitting an insurance contract to the jury for construction, a court first should attempt to construe it as a matter of law. *E.g., Travelers Ins. Co. v. Blakey*, 255 Ga. 699, 700, 342 S.E.2d 308 (1986). Even if an insurance policy appears ambiguous, a court must try to interpret it by applying the pertinent canons of contract construction. If applying those canons does not clarify the ambiguity, then and only then is a jury question

presented. *E.g., Guest v. Horace Mann Ins. Co.*, 168 Ga.App. 714, 715, 310 S.E.2d 241 (1983); *Alley v. Great American Ins. Co.*, 160 Ga.App. 597, 599, 287 S.E.2d 613 (1981).

Several canons of contract construction apply in this case. First, a court must first look to the plain and literal meaning of the contractual language. *E.g., Monarch Ins. Co. v. Polytech Indus., Inc.*, 655 F.Supp. 1058, 1063 (M.D.Ga.), *aff'd mem.*, 833 F.2d 1020 (11th Cir.1987). Under Georgia law, "In construing an insurance contract the test is not what the insurer intended its words to mean, but rather what a reasonable person in the insured's position would understand them to mean." *Gulf Ins. Co. v. Mathis*, 183 Ga.App. 323, 358 S.E.2d 850 (1987). Courts must not creatively interpret contracts, but must ascribe to a contract's language its plain and ordinary meaning, reading the policy "as a layman would read it and not as might be analyzed by an insurance expert or an attorney." *Macon Light House Revival Center v. Continental Ins. Co.*, 651 F.Supp. 417, 420 (M.D.Ga.1987).

Second, an insurance policy is a contract, and the construing court must therefore view it as a whole, in light of the usual rules of contract construction. *E.g., National Hills Shopping Center, Inc. v. Liberty Mut. Ins. Co.*, 551 F.2d 655, 657 (5th Cir.1977) (applying Georgia law); *Dixon v. Midland Ins. Co.*, 168 Ga.App. 319, 322, 309 S.E.2d 147 (1983). In so doing, a court cannot view portions of the contract or policy in isolation. *E.g., Hercules Bumpers, Inc. v. First State Ins. Co.*, 863 F.2d 839, 841 (11th Cir.1989) (applying Georgia law); *Big Bear Ranches, Inc. v. Georgia Farm Bureau Mut. Ins. Co.*, 169 Ga.App. 307, 308, 312 S.E.2d 378 (1983). Courts must try to harmonize all provisions in the policy. *Hercules Bumpers*, 863 F.2d at 841.

Finally, in interpreting an insurance policy, a court must adhere to the overarching principle that "[a]ny ambiguity must be construed strictly against the insurer." *Id.; see Claussen v. Aetna Cas. & Surety Co.*, 259 Ga. 333, 334–35, 380 S.E.2d 686 (1989). Armed with these principles, the Court will turn to the present dispute.

### III. Interpreting The GEICO–Crawford Policy

The phrase in the insurance policy at issue, "used principally as a dwelling," is capable of two possible meanings. As discussed below, for the policy to be in effect, this language could require either that the premises be occupied and not vacant or only that the premises be used primarily or habitually as a place of abode, regardless of whether they are vacant or unoccupied at the time of the fire loss. The existence of these two possible interpretations highlights the facial ambiguity of the contract language, presenting a question of construction for the Court.

Georgia courts have never construed these exact words in the context of a dispute over insurance coverage. In the opinion that most closely approximates the case before this Court, the Georgia Appeals Court construed an insurance policy that required the premises to be *"occupied* principally for dwelling purposes." *Livaditis v. American Casualty Co. of Reading, Pa.*, 117 Ga.App. 297, 300, 160 S.E.2d 449 (1968) (emphasis added). The GEICO policy contains a slightly different requirement—that the premises be *"used* principally for dwelling purposes". Nonetheless, the *Livaditis* court's opinion is informative.

In *Livaditis*, the court found that a five bedroom rental house (and lean-to in the back of the house), used by the tenants in the manufacture of moonshine liquor, fell within the coverage provision of the plaintiff's homeowner's insurance policy which covered "the building described, including additions in contact therewith, *occupied principally for dwelling purposes."* 117 Ga.App. at 300, 160 S.E.2d 449 (emphasis added). Although it ultimately denied the plaintiff coverage on other grounds, the court found that the illegal use of the property, without the owner's knowledge, did not affect its status as a dwelling within the meaning of the insurance policy.

The court based its finding, that the rental house was "occupied principally for

dwelling purposes," on evidence that a woman and young girl were seen on the property, the house was lit at night, a car was parked outside, and fresh food was found in the icebox. *Id.* Thus, evidence of occupancy was a major factor in the court's interpretation of the coverage language. Yet, occupancy in and of itself did not establish that the rental house was "occupied principally for dwelling purposes." Instead, the obvious evidence of occupancy was used to demonstrate that the owner of the rental house did not know that the premises were being used for the manufacture of moonshine liquor, a decidedly non-residential purpose: "In view of the evidences of occupancy on the various visits, there was nothing to put the owner on notice that the building was not being used for dwelling purposes, if it was not, and a holding in favor of the defendant could not be predicated on this ground." *Id.* Although support for either construction can be gleaned from the *Livaditis* decision, the case does not resolve the issue of the relative importance of residential use versus occupancy in determining whether a structure is "used principally for dwelling purposes."

The ambiguity of the phrase "used principally for dwelling purposes" contrasts with the unambiguous language providing coverage only for owner-occupied dwellings found in another Georgia Appeals Court case, *Epps v. Nicholson,* 187 Ga.App. 246, 370 S.E.2d 13 (1988). In *Epps,* the Georgia court affirmed the trial court's grant of summary judgment in favor of the insurer where the policy defined "residence premises" as "the one or two family dwelling ... *where you reside...* ." *Id.* (emphasis added). The court found that the insurance company was justified in denying liability where the dwelling was tenant occupied, rather than owner occupied on the date of the fire loss.

The coverage language at issue in this case is far more uncertain than the owner occupancy language in *Epps* and as susceptible to multiple meanings as the language in *Livaditis.* Therefore, the Court must discern the meaning of the phrase "used principally for dwelling purposes" in the fire insurance policy according to the applicable canons of construction.

## A. Uncovering The Plain Meaning Of The Coverage Language

GEICO asserts that "used principally for dwelling purposes" means occupied or not vacant. Crawford argues that the premises were habitually used as a place of abode for 25 years, firmly establishing their residential character. As the discussion that follows demonstrates, the plain meaning of "used principally for dwelling purposes" encompasses components of both arguments and does not entirely negate either interpretation.

In similar coverage disputes, Georgia case law has made use of the dictionary in supplying the plain meaning of the words used to facilitate insurance contract construction. *See Salmon v. Commercial Union Ins. Co.,* 154 Ga.App. 8, 267 S.E.2d 273 (1980). Webster's defines a dwelling as "a shelter (as a house or building) in which people live." *Webster's Ninth New Collegiate Dictionary* 390 (1985). Black's Law Dictionary describes a dwelling as: "The house or other structure in which a person or persons live; a residence; abode; habitation; the apartment or building, or group of buildings, occupied by a family as a place of residence. Structure used as place of habitation." *Black's Law Dictionary* 454 (5th ed. 1979). While habitation by people is implicit in both these definitions, thus lending credence to GEICO's construction, neither definition explicitly requires *continuous* occupancy. An equally feasible construction of this phrase is that a building maintains its status as a dwelling, despite the fact that the premises are unoccupied or vacant at the time of the fire, as long as its primary use is residential. Crawford admits that neither Hickox nor any other tenant actually resided at the premises on the date of the fire. Nevertheless, from an ordinary person's perspective, the premises were not being used for a non-dwelling purpose—commercial, manufacturing or farming—at the

time of the fire.[1]

This construction is supported by the use of the word dwelling in other areas of the law. Georgia's arson statute provides strong support for the proposition that a building maintains its character or status as a dwelling house whether it is inhabited or not. The Georgia Code section entitled "Arson in the First Degree" provides, in relevant part, that:

(a) A person commits the offense of arson in the first degree when, by means of fire or explosive, he knowingly damages or knowingly causes, aids, abets, advises, encourages, hires, counsels, or procures another to damage:

(1) Any *dwelling house* of another without his consent or in which another has a security interest ... *whether it is occupied, unoccupied, or vacant;*

(2) Any building ... or other structure of another ... *if such structure is designed for use as a dwelling, whether it is occupied, unoccupied, or vacant ....*

O.G.C.A. § 16–7–60 (1988) (emphasis added). The Code is clear that unoccupancy or vacancy does not convert a building from a dwelling house to another type of structure for the purposes of an arson prosecution. *State v. Hovers*, 148 Ga.App. 431, 251 S.E.2d 397 (1978); *Turkes v. State*, 125 Ga.App. 831, 189 S.E.2d 135 (1972). *See also Wade v. State*, 195 Ga. 870, 875, 25 S.E.2d 712 (1943) (one bedroom used as sleeping quarters in building was sufficient to constitute dwelling within meaning of

arson statute where building involved in arson prosecution was used for grocery store, dance hall and filling station).

Georgia cases interpreting vacancy exclusion clauses provide a counterpoint to the use of the word dwelling in the arson statute. GEICO relies on these cases to argue that the content of the language "used principally for dwelling purposes" hinges on occupancy.[2] GEICO's failure to include an explicit vacancy exclusion provision for fire coverage precludes it from recasting this dispute as a vacancy exclusion clause case and using these cases as direct precedent. *See* Section III–B, below. Nonetheless, these cases are useful in deciphering the connection between vacancy and "dwelling purposes."

For example, it is reasonable to consider a building vacant when a house "lack[s] the amenities minimally necessary for human habitation...." *American Mut. Fire Ins. Co. v. Durrence*, 872 F.2d 378, 379 (11th Cir.1989) (applying Georgia law). In *Durrence*, the house was empty except for a refrigerator, stove, washing machine, and small table. The utilities had been shut off for approximately 60 days. The last tenant had moved out several months previously, and the owner admitted that the house was "vacant and unoccupied and could remain so for the indefinite future." 872 F.2d at 379. Under these circumstances, the court found that the house was vacant within the meaning of the vacancy exclusion clause in the owner's policy.

The Georgia Supreme Court reached the opposite conclusion in *Fireman's Fund*

---

**1.** Although the parties have not argued or briefed the issue, there is some suggestion in the plaintiff's deposition that some of the operations of his business, Strickland Tile, were located in the house during the policy period. The deposition testimony presented to this Court, however, also indicates that Crawford informed GEICO of this use and that the business shut down at least four months before the fire and before Hickox ceased residing at the premises.

**2.** The cases discussed in this section were decided under Georgia law. The Court of Appeals for the Fifth Circuit has decided two cases construing similar language under Texas law. In *Fisher v. Indiana Lumbermen's Mutual Ins. Co.*, 456 F.2d 1396 (5th Cir.1972), the court found that the insured plaintiff did not occupy the house

"principally for dwelling purposes" under the Texas Standard Homeowner Policy where the insured was living several miles away while awaiting completion of the repairs in anticipation of eventual occupancy. The court found that, "Under such circumstances Texas law clearly prescribes that by the explicit terms of the policy no liability for the loss ever arose." 456 F.2d at 1398. *See Woodruff v. Southeastern Fire Ins. Co.*, 426 F.2d 555 (5th Cir.1970) (court found structure not used for dwelling purposes where plaintiffs partially dismantled structure prior to fire). *Fisher* and *Woodruff*, although former Fifth Circuit cases, do not bind this Court because they interpret Texas law rather than Georgia law. *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981).

*Ins. Co. v. Wofford,* 182 Ga. 900, 187 S.E. 76 (1936). The court found that the rental dwelling in question was not vacant although the policy provided that the policy would become void if the house, "whether intended for occupancy by owner or tenant, be or become vacant and unoccupied and so remain for ten days". *Id.* In *Wofford,* the tenant and his family had left the dwelling 17 days before the fire, but the tenant retained the key, and some of his family's personal property remained in the house. The owner had another tenant ready to move in as soon as the first tenant finished moving. The court held that, "A fair and reasonable construction of the language vacant and unoccupied is that a building should be without an occupant—without any person living in it." 182 Ga. at 903–04, 187 S.E. 76 (quoting, 14 R.C.L. 1103). The court further instructed that, "The language is not used in a technical but popular sense. It is not essential that some one sleep in a dwelling, to render it occupied." *Id.* at 904, 187 S.E. 76. Indeed, courts in other jurisdictions have employed a wide variety of tests to determine when a structure is vacant or unoccupied. *See* Annotation, *What Constitutes "Vacant or Unoccupied" Dwelling Within Exclusionary Provision of Fire Insurance Policy,* 47 A.L.R.3d 398 (1973 & Supp.1990) (identifying and discussing factors used to determine whether premises are vacant or unoccupied, including, effect of visits to premises, presence of household goods and personal property, intention to reside at prem-

ises, alteration or repair of premises, condition of premises). Thus, these cases provide only limited support for GEICO's construction because a fair reading of these cases indicates that even vacancy is not a clear cut issue.

While the foregoing investigation of the plain meaning of the coverage language, as understood by an ordinary person, provides strong support for construction advanced by Crawford, the discussion of the vacancy exclusion cases shows that vacancy is also a component of the plain meaning of the phrase "used principally for dwelling purposes." The plain meaning analysis, therefore, does not resolve the question of which interpretation this Court should adopt. The Court will now turn to other interpretive principles.

B. *Looking At The Insurance Contract As A Whole*

The second canon of construction addressed by this Court, that an insurance policy must be read as a whole, has particular application to this case. Although other sections of the GEICO broad form insurance contract explicitly deny coverage if the insured premises are vacant for 30 days prior to the loss complained of, there is no vacancy or exclusion clause for peril by fire in this policy.[3] The presence of vacancy exclusion clauses throughout GEICO's broad form insurance contract suggests that GEICO (the insurer and drafter of the policy) would have included such a clause for fire if it intended to exclude Crawford

---

**3.** GEICO's standard broad form policy contains exclusions from coverage for the following perils if the insured premises have been vacant for more than 30 consecutive days immediately before the loss:

8. **Vandalism or malicious mischief**
This peril does not include loss:
    a. by pilferage, theft, burglary or larceny; or
    b. to property on the Described Location if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.
9. **Breakage of glass or safety glazing material** which is part of a building, storm door or storm window.
This peril does not include loss on the Described Location if the dwelling has been va-

cant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.
10. **Burglars**
This peril does not include loss:
    a. to property taken by burglars; or
    b. to property on the Described Location if the dwelling has been vacant for more than 30 consecutive days immediately before the loss.
Section DP–3000 (Ed. 12–88), which changes the form contract to reflect the idiosyncracies of Georgia law, of the policy deletes the above provision on burglary and substitutes a provision entitled "Damage by Burglars" which contains the exact language regarding vacancies. In addition, two other perils described in the policy contain vacancy exclusion provisions.

from recovery should his premises become vacant or unoccupied for a specified period of time.

Although Crawford was not insured for all of the perils contained in the GEICO broad form contract, the policy he received from GEICO included the entire broad form contract. Viewing the contract in its entirety, GEICO cannot reasonably argue that the language "used principally for dwelling purposes" is equivalent to the vacancy exclusion provisions contained elsewhere in the contract where GEICO "itself chose not to include easily available form language that would have readily provided the necessary specificity." *Ranger Ins. Co. v. Culberson*, 454 F.2d 857, 863 (5th Cir.), *cert. denied*, 407 U.S. 916, 92 S.Ct. 2440, 32 L.Ed.2d 691 (1972) (applying Georgia law).

In *Ranger*, the aviation insurance policy at issue included a standard contract plus an additional page of printed exclusions. The page contained four exclusions, with boxes to the side that the insurer was to check if applicable to the policy. Two were checked in the insured's policy and two were not checked. In denying the insurer's argument that the insured's failure to comply with requirements related to the omitted exclusions suspended the policy's coverage, the court noted, "In viewing the totality of the policy, we observe that omitted form paragraphs are parts of a written document. They serve to explain the intent of the parties, just as typewritten or handwritten statements serve to clarify or to change the sense of printed paragraphs." 454 F.2d at 861.

Similarly, the omission of the express vacancy exclusion language from the contract provisions concerning fire loss compel the conclusion the GEICO did not intend to preclude Crawford from recovering for fire loss if the premises became vacant or unoccupied. GEICO's attempt to transform the broad coverage language "used principally for dwelling purposes" into a more narrow vacancy exclusion must fail. "Words of exclusion will be given small tolerance when insurance companies choose words of imprecision." *Ryder Truck Rental, Inc. v.*

*St. Paul Fire & Marine Ins. Co.*, 540 F.Supp. 66, 69 (N.D.Ga.1982) (quoting, *National Hills*, 551 F.2d at 657 (quoting, *Ranger Ins. Co. v. Culberson*, 454 F.2d at 864)). Therefore, the policy as whole suggests that "used principally for dwelling purposes" is not the equivalent of vacancy or unoccupancy.

### C. Construing The Insurance Contract In Favor Of The Insured

The canons of construction already discussed are subject to the principle that an insurance policy generally must be construed against the insurance company and in favor of the insured. As the Georgia Supreme Court has stated:

> [I]f the construction is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred. Georgia courts have long acknowledged that insurance policies are prepared and proposed by insurers. Thus, if an insurance contract is capable of being construed two ways, it will be construed against the insurance company and in favor of the insured.

*Claussen v. Aetna Cas. & Surety Co.*, 259 Ga. 333, 334–35, 380 S.E.2d 686 (1989). As noted above, the results of the plain meaning analysis were inconclusive. Under *Claussen*, this Court must construe the policy language in favor of Crawford, the insured. Further, the intent of the parties, as derived from reading of the contract in its entirety, was that coverage for fire loss would be provided even if the premises became vacant or unoccupied. Thus, after ascertaining the intent of the parties, and construing any remaining ambiguity in favor of Crawford, the Court concludes that the phrase "used principally for dwelling purposes" means used primarily as a residence rather than for other purposes.

### IV. Revisiting the Summary Judgment Issue

Given the construction of the phrase "used principally for dwelling purposes" adopted by the Court, GEICO must prove that, as a matter of law, it is entitled to a finding that the fire insurance policy did

not cover the Crawford premises because those premises were not used primarily as a residence or place of habitual abode. GEICO also bears the burden of proving its assertion that the premises were used as a storage facility. In assessing whether GEICO has met this standard, the facts will be construed most favorably for Crawford, the party opposing summary judgment. *Regan v. United States Small Business Admin.*, 926 F.2d 1078, 1080 (11th Cir.1991).

On the basis of the following facts, the Court concludes that GEICO has not met its burden. The premises had been rented as a residence for the majority of the 25 years before the fire. Indeed, the premises were used as a residence until a little over one month before the fire. At the time of the fire, Hickox, who clearly was not residing at the premises, still had several personal belongings at the house and had not completed moving. In addition, the premises were fit for habitation. Although the furniture was not of the finest quality, it was fit for human use. The utilities were operative. Crawford was in the process of repairing the damaged water pipe in the bathroom and could easily provide the premises with running water by turning the water back on at the street meter. Thus, Crawford, the nonmovant, has provided sufficient evidence to show that there is a genuine issue of material fact necessitating trial. *See Johns v. Jarrard*, 927 F.2d 551, 555 (11th Cir.1991).

## CONCLUSION

GEICO's motion for summary judgment turns on the meaning of the coverage language in the GEICO–Crawford insurance policy. Applying settled canons of construction, the Court concludes that the phrase "used principally for dwelling purposes" means that for coverage to be in effect the premises must be used primarily as a place of abode. A temporary period of vacancy or unoccupancy does not automatically negate a building's status as a dwelling. Because GEICO has failed to establish that the premises were used for a nonresidential purpose, and Crawford has provided sufficient evidence to show that there

is a genuine issue of material fact necessitating trial, GEICO's motion for summary judgment is DENIED.

SO ORDERED.